Annexation of 52.13 square miles in six areas was desired by the City of Jackson (Jackson herein) which adopted an ordinance on August 27, 1974, defining the subject lands. Miss. Code Ann. §21-1-27 (1972). Jackson then petitioned the Chancery Court of the First Judicial District of Hinds County for a decree under Mississippi Code Annotated § 21-1-29 (1972), ratifying, approving, and confirming the proposed enlargement *Page 491 
of its municipal boundaries. After hearing voluminous and conflicting testimony, the chancellor decreed ratification and confirmation of the ordinance as to about forty square miles. We affirm.
The appellants (objectors) argue: (1) Mississippi Code Annotated § 21-1-27, supra, upon which the decree appealed from is based, violates the "equal protection clause of the 14th Amendment of the Constitution of the United States," and (2) the chancellor erroneously held that the "annexation was reasonable and was required by public convenience and necessity."
 I.
As to the constitutionality of § 21-1-27, supra, the appellants say that it denies to the qualified electors the right to vote by petition or otherwise, and accordingly denies them the equal protection guaranteed by the United States Constitution. The constitutionality of the section (§ 3374-10 in our 1942 Code) was upheld in Bridges v. City of Biloxi, 253 Miss. 812,178 So.2d 683 (1965), but there the argument was that the property of the objectors would be subject to taxation to pay general obligation bonds issued by Biloxi prior to passage of the annexation ordinance.
When the Mississippi Legislature enacted § 21-1-27 granting unto municipalities the power of annexation, the lawmakers specifically legislated so as to permit such annexation of land without any requirement that the inhabitants of the subject area give prior consent or in any way express their approval. The United States Supreme Court held in Hunter v. City ofPittsburgh, 207 U.S. 161, 177-79, 28 S.Ct. 40, 46-47, 52 L.Ed. 151 (1907), that municipalities, as creatures of the state, may exercise such powers "as may be entrusted to them." It further held in Hunter that the territorial area of a municipality may be expanded "with or without the consent of the citizens, or even against their protest." The right or power of a municipality in this state acting under the legislative mandate of § 21-1-27 to extend its boundaries without the consent of those living within the path of the extension was also litigated and upheld in TexasGas Transmission Corporation v. City of Greenville,242 So.2d 686, 689 (Miss. 1971). See 2 E. McQuillen, The Law ofMunicipal Corporations, § 7.16 (3d ed. 1966); City of Biloxi,Mississippi v. Cawley, 332 So.2d 749 (Miss. 1976); and City ofJackson, Mississippi v. The Town of Flowood, Mississippi,331 So.2d 909 (Miss. 1976).
No showing was made by appellants that Jackson was by means of annexation gerrymandering its voting precincts to discriminate against any particular class of objectors. No evidence indicated that any litigant was the subject or object of discrimination. Appellants assert that the annexation would be unconstitutional because the residents would be subject to the control of municipal officers in whose election they did not vote. However, there is no substance to this assertion. No cited case has ever required an immediate election. Such is not the law and we cannot so hold as long as § 21-1-27 remains in its present form — only the legislature can alter its terms. Interesting is the fact that there was a time when the issue of annexation was one triable by jury, but that requirement was changed by the legislature.Kraetzer Cured Lbr. Co. v. Town of Moorhead, 118 Miss. 736, 80 So. 4 (1918). Many citizens, like the chancellor in City ofBiloxi v. Cawley, supra, are convinced "that the people in the territory . . . should have the right to vote on the question of their being taken into the municipality." However, as noted by him, "such an election" is not provided by present statutes, and the Constitution does not permit courts to judicially legislate and thereby "change the statutes" created by the legislative branch of our government.
Appellants point to the fact that in cases involving areas proposed to be incorporated, qualified voter inhabitants are allowed to "vote by Petition" on the proposed incorporation [Miss. Code Ann. § 21-1-13 (1972)]. Similarly, Mississippi Code Annotated § 21-1-45 (1972) allows voting by *Page 492 
petition where citizens voluntarily seek either annexation to or exclusion from an area already incorporated. On this basis appellants say they are denied equal protection of the law because they are not permitted to vote on the annexation proposition initiated by Jackson, an existing incorporated city. There is no merit to such an argument because there is "a fundamental difference of some magnitude" between incorporation of an unincorporated area on the one hand and the extension of corporate boundaries on the other. Hamilton v. Incorporation ofPetal, 291 So.2d 190 (Miss. 1974). The legislature, aware of the distinction between the two legal processes (incorporation and annexation), saw fit to legislate as reflected in the statutes referred to above, and we are unable to say that enactment of the statutes resulted in any arbitrary or irrational classification.
 II.
Burdened with showing that the annexation was reasonable and required by public convenience and necessity pursuant to Code §21-1-27, supra, Jackson presented testimony from a large number of witnesses. These witnesses included experts whose testimony related to the following criteria set forth in Texas GasTransmission Corp. v. City of Greenville, supra, at 689: (1) the city's need for expansion; (2) whether the area to be annexed is reasonably within the path of such expansion; (3) the potential health hazard from sewage and water disposal; and (4) the city's financial ability to make improvements and furnish municipal services as promised.
Testimony showed that Jackson had a sewage treatment plant with adequate capacity to take care of the needs of the people in the subject area. Other testimony was that presently in the territory, health problems were posed by the sewage and waste water facilities which could be better controlled if annexation were allowed. Also heard by the chancellor was testimony showing a present need for police service in the area affected which could better be provided by annexation. It was shown that better fire protection and resulting savings in fire insurance premiums could be furnished if the area were annexed. Other evidence demonstrated a need for better street lighting in the area of proposed annexation that could be provided within a reasonable time after annexation.
Additional testimony was to the effect that if the territory were annexed Jackson could provide better recreational facilities and better garbage pickup service to the inhabitants. In summary, there was testimony in support of each of the five pertinent criteria according to Texas Gas Transmission Corp., supra, and to the effect that Jackson had the financial ability to make the improvements and furnish all municipal services as promised.
To the contrary, appellants presented testimony, including that of experts, tending to indicate that under the applicable criteria annexation was improper. Much of their testimony concerned the fact that a considerable portion of the land sought to be annexed was open or swamp land which Jackson had no reason to annex. As pointed out by us in Dodd v. City of Jackson,238 Miss. 372, 118 So.2d 319 (1960), where it can be reasonably anticipated that the parcel of land will become a part of the city within a reasonable time, such property may be taken in so as to develop it properly and wisely with reference to the securing of water, the development of streets and the collection and disposal of sewage and waste "rather than to let the area develop in a harum-scarum manner."
After hearing the conflicting expert opinions and radically divergent testimony, the chancellor (empowered by the legislature to act as he did) accepted that offered on behalf of Jackson. In our judgment, the evidence in behalf of Jackson was substantial and formed a sufficient basis to support the decree appealed from. Supported by substantial evidence and not manifestly wrong or against the weight of the evidence, *Page 493 
the chancellor's decree must be affirmed.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER and LEE, JJ., concur.