582 P.2d 1277

Frank TORRES, Ernest Trujillo and Willie Romero, Plaintiffs-Appellants,

v.

The VILLAGE OF CAPITAN, a Municipal Corporation, Jay Johnston, Mayor, Dick Beck, Norman Renfro, Herman Otero and Valton Hall, members of the Village Trustees, Defendants-Appellees.

No. 11567.

Supreme Court of New Mexico.

Aug. 9, 1978.

Steve Herrera, Santa Fe, for plaintiffs-appellants.

Archie Witham, Carrizozo, Rodey, Dickason, Sloan, Akin & Robb, Victor Marshall, Albuquerque, for defendants-appellees.

## OPINION

EASLEY, Justice.

Plaintiffs-appellants, Frank Torres, Ernest Trujillo and Ernie Romero (hereinafter Torres) brought suit in the Lincoln County District Court against the Village of Capitan and the Village Trustees (hereinafter Village) seeking to invalidate an annexation of contiguous land by the Village. The court denied Torres' motion for summary judgment on the pleadings and entered judgment on a stipulated record in favor of the Village. Torres appeals. We affirm.

*Issues*

The issues are:

1. Whether the doctrine of either res judicata or collateral estoppel is an effective bar against the annexation by the Village under the circumstances where the Village had previously annexed "the same territory", where the annexation was challenged in court by Torres with the "same parties" participating, and where the district judge in the first trial ruled that § 14–7–17, N.M.S.A. 1953, the annexation statute relied upon in both cases, was unconstitutional.

2. Whether the statute, § 14–7–17, *supra,* which authorizes a municipal corporation to annex contiguous territory upon the petition of the *owners of a majority of the acres* in the territory in question, is unconstitutional as being in violation of the "one man-one vote" principle of the equal protection clause of the United States Constitution, in that it does not provide for annexation by a petition of a *majority of the landowners* in the area to be annexed without regard to the number of acres each owns.

In order to decide the second issue, we must also decide whether signing a petition to initiate an annexation proceeding is equivalent to casting a ballot and thus entitled to the special protection accorded voting rights under the equal protection clause of the Constitution.

3. Whether § 14–7–17, *supra,* was the proper statute since allegedly the Village was the prime-mover in the efforts to obtain signatures on the annexation petition. We handle this question summarily for the reason that, even if the Village promoted the annexation effort, which does not clearly appear from the record, the evidence plainly shows that the landowners were the real petitioners instead of the Village and proper proceedings were conducted under the terms of the statute.

*The Dispositive Facts*

The Village concluded the first annexation on December 1, 1975, after having received a petition which was allegedly signed by owners of a majority of the acreage in the area to be annexed. The number of residents in the area was established as between 29 and 31.

Of the thirteen signatures on the petition seven had been placed there by an attorney-in-fact, rather than by the property owners. The trial court held that these signatures were not proper for the reason that the powers-of-attorney had not been recorded.

However, the trial court held that the question of the adequacy of the signatures was a moot issue, since it was ruling that § 14–7–17, *supra,* was unconstitutional as being violative of the "one man-one vote" rule.

The record included a copy of the first petition for annexation which showed that the total acreage to be annexed was 256.25 acres and that the owners of 153.51 acres had signed the petition. The court's holding that the signatures of Hollis Cummins as attorney-in-fact for owners of 87.27 acres of land were invalid would necessarily mean that the petition was insufficient under the statute since the six owners that remained on the petition held less than a majority of the acreage in the area to be annexed.

The trial court concluded that § 14–7–17, *supra,* is unconstitutional as being in violation of the "one man-one vote" rule of the equal protection clause of the Fourteenth Amendment to the United States Constitution because it allocates "votes" based on the acres involved rather than the number of owners. The Village did not appeal the decision of the court.

A second annexation was approved by the Village on October 19, 1976. This was based on a new petition, purportedly signed not only by owners representing a majority of the acreage to be annexed but also by a majority of the owners of land in the territory involved.

The same petitioners, including Torres, challenged the legality of the second annexation in the district court with a different judge presiding.

The record is quite complicated. The Village in its answer admitted that "the identical territory" was involved in the second petition as in the first one, although the record does not sustain this fact. Nevertheless, the court made a finding to this effect. The second Petition for Annexation showed that the landowners who signed owned 174.94 acres of a total of 250.70 acres in the area proposed to be annexed. This contrasts with the evidence at the first trial which showed that thirteen owners holding 153.51 acres in a tract of 256.25 acres were involved in the first annexation.

A plat of the acreage to be annexed became part of the record in the second case. It showed that there had been changes in the ownership of several of the tracts of land since the first trial.

The trial court in the second case held that the parties in the two cases were identical, that the territory was identical and that the capacity of the persons in both suits was identical. On the other hand, the court concluded that the subject matter of the first cause was the 1975 annexation attempt, while the subject matter of the second cause was the 1976 annexation attempt. Therefore, since the subject matter was not identical, the doctrine of res judicata was not applicable. Collateral estoppel was also rejected by the court. The court further held that § 14–7–17, *supra,* is not unconstitutional for the reasons claimed.

### Doctrine of Res Judicata

■ Many New Mexico cases have stated the requirements for applying the doctrine of res judicata to bar a subsequent case. The second suit must be identical with the prior suit in four respects: (1) identity of the subject matter, (2) identity of the cause of action, (3) identity of persons and parties, and (4) identity of the capacity or character of the persons for or against whom the claim is made. *E. g. City of Santa Fe v. Velarde,* 90 N.M. 444, 564 P.2d 1326 (1977); *Atencio v. Vigil,* 86 N.M. 181, 521 P.2d 646 (1974); *Adams v. Cox,* 55 N.M. 444, 234 P.2d 1043 (1951).

■ The key question is whether the court was correct in holding that the essential element of identity of subject matter in the two suits is lacking. The subject matter of the first suit was the 1975 annexation attempt which turned out to be based on an invalid annexation petition. It was not necessary in the first suit that the trial judge reach the question of constitutionality of the annexation statute. The subject matter of the second suit was the 1976 annexation which was based on an entirely different ordinance, on a petition that con-

68

tained a majority of the owners of land in the area to be annexed and representing a majority of the acres involved, and proceedings that were free of any valid objection.

The ultimate facts necessary for the resolution of the two suits were different. The issues necessarily dispositive in the prior cause were therefore different from those in the present cause. *City of Santa Fe, supra.*

We hold that the doctrine of res judicata is inapplicable.

### Doctrine of Collateral Estoppel

■ The doctrine of collateral estoppel, sometimes referred to as "issue preclusion", is an entirely distinct concept. *City of Santa Fe, supra; Atencio, supra.* It applies to identical issues in two suits where the same parties are involved in both suits even though the "subject matter" or the "cause of action" in the second is different from the first. Collateral estoppel applies to prevent the relitigation, as between the parties, of ultimate facts or issues actually and necessarily decided by the prior suit. *Lawlor v. National Screen Service*, 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *City of Santa Fe, supra; Atencio, supra; Paulos v. Janetakos*, 46 N.M. 390, 129 P.2d 636 (1942). In the situation before us the "subject matter" of the two suits is different since the "subject matter" of the suits is not simply the land involved, but the two different attempts to annex the same land. Likewise the "cause of action" in each suit is different because each seeks review of the validity of different annexation attempts.

Nevertheless collateral estoppel can be applied to bar relitigation of any ultimate facts or issues common to both suits, and actually and necessarily decided in the first. Torres contends that the doctrine of collateral estoppel should likewise apply to prevent the remaking of any conclusions of law made in the first case and asserts that the parties and the trial court in the second case are estopped to reconsider the conclusion of law made in the first case that the annexation statute is unconstitutional.

■ We do not agree with this contention. The whole concept underlying collateral estoppel is to aid the finality of judgments by preventing *parties* from endlessly relitigating the same issues under the guise of different "causes of action." It is not intended to tie the hands of judges nor to be a way to amend the law of New Mexico by forcing one judge to accept the conclusions of pure law made by another without benefit of an appeal to this Court. Where a judge's ruling on a matter of law is intertwined with the facts of a particular case it is collaterally binding in a subsequent suit between the same parties or privies because the ruling on the factual issue, which is final under the doctrine of collateral estoppel, cannot be separated from the legal conclusion and thus both must be binding if the factual determination is to be. *McDonald v. Padilla*, 53 N.M. 116, 202 P.2d 970 (1948). However, a conclusion or statement purely of law which is not dependent for its meaning or validity on the facts of a particular case is not binding on the judge in a later suit between the parties; "litigants have no vested right to an erroneous conclusion of law." *Id.* at 125, 202 P.2d at 976.

■ As the United States Supreme Court has observed, the collateral estoppel effect of res judicata "does not apply to unmixed questions of law. Where, for example, a court in deciding a case had enunciated a rule of law, the parties in a subsequent action upon a different demand are not estopped from insisting that the law is otherwise, merely because the parties are the same in both cases." *United States v. Moser*, 266 U.S. 236, 242, 45 S.Ct. 66, 67, 69 L.Ed. 262 (1924). *Accord, Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Hadge v. Second Federal Savings and Loan Ass'n of Boston*, 409 F.2d 1254 (1st Cir. 1969); *McDonald, supra.*

■ We hold that the conclusion reached by the judge in the first case that the statute was unconstitutional was a conclusion purely of law and therefore is not collaterally binding on the judge in a second case between the same parties or privies.

*McDonald, supra.* The Village was not collaterally estopped to assert that the statute was constitutional in the second suit.

### One Man-One Vote Theory

The City proceeded under § 14–7–17, N.M.S.A. 1953 to annex the property in question. This section provides in pertinent part that a city government may annex:

Whenever a petition:

(1) seeks the annexation of territory contiguous to a municipality; [or]

(2) is signed by the owners of a majority of the number of acres in the contiguous territory.

 The extension of municipal boundaries falls exclusively within the legislative power. It is not a function of the judiciary. Great latitude must of necessity be accorded the discretionary acts of the legislature, and every reasonable presumption in favor of the validity of its action must be indulged. *E. g. Hughes v. City of Carlsbad,* 53 N.M. 150, 203 P.2d 995 (1949); *Botsford v. City of Norman,* 354 F.2d 491, 494 (10th Cir. 1965); *see Weber v. City Council of Thousand Oaks,* 9 Cal.3d 950, 109 Cal.Rptr. 553, 513 P.2d 601 (1973).

The Supreme Court of the United States has adopted two different tests to be applied to statutes attacked on the basis of the equal protection clause of the Fourteenth Amendment. In the ordinary equal protection case the classification need only bear a rational relationship to a conceivable state purpose to be upheld. However, when the classification deals with a "suspect classification" or touches on "fundamental interest" the court has ruled that the statute must be subjected to the strictest scrutiny and be upheld only if the state can show a compelling interest that justifies the classification. Voting rights have been declared by that court to be one of those "fundamental interests" that must be subjected to the strictest standard. *Reynolds v. Simms,* 377 U.S. 533, at 562, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

Torres equates the signing of an annexation petition with voting rights. There is

respectable and somewhat persuasive authority in support of this theory. *E. g. Town of Fond du Lac v. City of Fond du Lac,* 22 Wis.2d 533, 126 N.W.2d 201 (1964); *Levinsohn v. City of San Rafael,* 40 Cal. App.3d 656, 115 Cal.Rptr. 309 (1974); *Curtis v. Board of Supervisors of Los Angeles County,* 7 Cal.3d 942, 104 Cal.Rptr. 297, 501 P.2d 537 (1972).

Neither the United States Supreme Court nor this Court has considered the precise issue with which we are concerned.

 There is no federal constitutional requirement that elections be held on local matters. Non-electoral means are used by states to resolve local matters without the action being considered in violation of the "fundamental" right to vote. *See, Murphy v. Kansas City, Missouri,* 347 F.Supp. 837, 845–47 (W.D. Mo. 1972).

 Where the denial is challenged on the grounds that elections are conducted to decide other similar matters, it has been held that the traditional equal protection test requiring a minimum rational basis for the discrimination is the applicable standard of review rather than that of strict scrutiny since there has been no infringement of a "fundamental" right. *Lowe v. City of Jackson,* 336 So.2d 490 (Miss. 1976), *U.S. cert. denied,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1977); *Murphy, supra.* Under "minimum" scrutiny, a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. *Murphy, supra; see McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

In states where some statutory annexation procedures were electoral, challenges to the non-electoral annexation laws turn on whether there was a rational or reasonable basis for allowing elections in one situation while denying them in another. *Adams v. City of Colorado Springs,* 308 F.Supp. 1397 (D. Colo. 1970); *aff'd per mem.,* 399 U.S. 901, 90 S.Ct. 2197, 26 L.Ed.2d 555 (1970); *Weber, supra.*

In *Adams, supra,* the court reasoned that since *no person* was allowed to vote on the

annexation there was no fundamental right to vote and standards of equal protection were inappropriate.

The *Adams* court also held that there was a rationale basis for the classification and that it was not unreasonable to deny the residents of the area proposed to be annexed the right to vote on the matter. This denial of an annexation election when there is a "rational or reasonable" basis for such action was summarily affirmed by the United States Supreme Court. 399 U.S. 901 (1970).

Under New Mexico law, none of the three procedures provided for annexation of a territory by a municipal corporation mandates an election. § 14–7–1, N.M.S.A. 1953 provides three methods of annexing territory to a municipality:

1. The arbitration method as provided in § 14–7–5 through § 14–7–10, N.M.S.A. 1953.

2. The boundary commission method as provided in § 14–7–11 through § 14–7–16, N.M.S.A. 1953.

3. The petition method as provided in § 14–7–17, N.M.S.A. 1953 and used in this case.

There being no provision in our law for an election on this issue, we have even less need to apply strict scrutiny regarding the issue bearing on violations of the equal protection clause than was true in *Adams, supra.* Only minimum scrutiny need be applied to uphold the constitutionality of our statutes since they do not involve elections and therefore do not infringe upon the fundamental right to vote. Under this level of scrutiny a statutory discrimination or inequality will not be set aside if any state of facts reasonably may be conceived to justify it. *McGowan, supra.* The record need not show what the reasonable basis is since the appellate court may on its own find a reasonable basis. *Id.* One obvious and rational basis for the initiation of the annexation by owners of a majority of the acreage is that taxes to support the Village will be partially apportioned in accordance with the amount of land owned by the new residents or landowners brought into the Village. Our statutes meet the test of minimum scrutiny.

There are numerous decisions establishing a general rule that law providing for annexation without the consent of the inhabitants are constitutional and do not violate the equal protection rights of those inhabitants. *E. g., Lowe, supra; General Battery Corp. v. City of Greer,* 263 S.C. 533, 211 S.E.2d 659 (1975); *Weber, supra; Pomponio v. City of Westminister,* 178 Colo. 80, 496 P.2d 999 (1972); *Fairview Public Util. Dist. No. 1 v. City of Anchorage,* Alaska, 368 P.2d 540 (1962), *appeal dismissed,* 371 U.S. 5, 83 S.Ct. 39, 9 L.Ed.2d 49 (1962).

We hold that petitioning for annexation of land in this case is not a fundamental voting right and that § 14–7–17, *supra,* is constitutional. We affirm the decision of the trial court.

IT IS SO ORDERED.

McMANUS, C. J., and FEDERICI, J., concur.