501 So.2d 401 (1987)
In the Matter of the Alteration of the Boundaries of the City of Horn Lake, Mississippi: J.W. McElhaney, et al.
v.
CITY OF HORN LAKE, Mississippi.
No. 55950.
Supreme Court of Mississippi.
January 14, 1987.
*402 Dudley B. Bridgforth, Jr., Bridgforth, Woods & Snyder, Southaven, for appellants.
Allen B. Couch, Southaven, Thomas J. Lowe, Jr., Jackson, for appellee.
Before HAWKINS, P.J., and DAN M. LEE and SULLIVAN, JJ.
DAN M. LEE, Justice, for the Court:
Objectors appeal from the order in the Chancery Court of DeSoto County confirming the City of Horn Lake's annexation of certain parts of DeSoto County lying south of the city's border. They assign the following errors:
1. The Court's findings of fact are not supported by substantial credible evidence.
2. The Court erred in determining that relevant criteria was that the residents of Study Area Two were currently receiving benefits of City residency without cost and that such was a paramount consideration.
3. The Court erred in relying upon comparative information and facts derived from the 1976 annexation hearing as such were not admitted into evidence and were not appropriate for consideration under the doctrine of judicial notice, nor were same relevant to the sole issue of reasonableness.
4. The Court erred in shifting the burden of proof from the City of Horn Lake to the Objectors, Appellants herein.
5. The Court erred in concluding as a matter of law that this case was governed by Section 21-1-13 of the Mississippi Code.
Finding that the chancellor's decision was based on substantial credible evidence and not manifestly wrong, we affirm.

FACTS
The City of Horn Lake, Mississippi, through an ordinance duly approved September 6, 1983, sought to annex adjacent property lying to the south of its border. On September 9, 1983 there was filed on behalf of the city a petition seeking confirmation of the boundary alteration in DeSoto County Chancery Court.
The area sought to be annexed included two residential subdivisions known as Churchwood and Church Road Estates. Churchwood residents Gary Spencer, Charles Davis and J.W. McElhaney in proper course filed an objection to the city's petition alleging that they represented some 150 families who wanted the petition denied.
*403 The petition came on for hearing February 27 and 29, 1984 and March 1 and 2, 1984.
In his findings of facts and conclusioons of law issued April 30, 1984, the chancellor found the proposed annexation reasonable and it was thus ratified, approved and confirmed.
The facts adduced at the hearing showed that the city's decision was based on the recommendation of a commissioned study called Urban Fringe Analysis: Horn Lake, Mississippi. The study was prepared by B.T. Page, director of planning and development for O'Fallon, Missouri, who testified for the city. The study focused on three adjacent areas for possible annexation, and it suggested that area # 2, the area including Churchwood and Church Road Estates, presented the most favorable choice.
The area, referred to throughout the hearing as Study Area # 2, had a population of 450 based on the 1980 census. The City of Horn Lake had a population of 4,326 based on the same census. However, Study Area # 2 had an assessed property value of $8 million in 1980. The city's total assessed property value at the time of the hearing was about $12 million. It was stipulated that all but a handful of residents in the area opposed annexation.

I.

WAS THE COURT'S FINDINGS OF FACT SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE?
When a chancellor is presented with a petition to alter municipal boundaries, the question he is obligated to answer is whether that alteration is reasonable. Western Line Consolidated School District v. City of Greenville, 465 So.2d 1057 (Miss. 1985); Extension of Boundaries of City of Clinton, 450 So.2d 85 (Miss. 1984); Extension of Boundaries of Horn Lake v. Renfro, 365 So.2d 623 (Miss. 1978); Miss. Code Ann. § 21-1-33 (1972).
As a reviewing Court, our duty is limited to a determination of whether the chancellor's finding on this question is manifestly wrong. Extension of Boundaries of City of Moss Point v. Sherman, 492 So.2d 289, 290 (Miss. 1986); Enlargement of Boundaries of Yazoo City v. City of Yazoo City, 452 So.2d 837, 838 (Miss. 1984); Extension of Boundaries of Clinton, 450 So.2d at 89.
Where there is conflicting evidence we must give great deference to the chancellor's findings. Sherman, 492 So.2d at 290; Liddell v. Jones, 482 So.2d 1131 (Miss. 1986); Hans v. Hans, 482 So.2d 1117 (Miss. 1986).
In Extension of Boundaries of City of Biloxi v. City of Biloxi, 361 So.2d 1372, 1376 (Miss. 1978), we stated:
[T]he decision on conflicting evidence will not be disturbed unless this Court can say that from all the evidence the chancellor was manifestly wrong, or his decree was clearly against the overwhelming weight of the evidence. City of Picayune v. Quick, 238 Miss. 429, 117 So.2d 718 (1960); and the decision will not be disturbed if supported by substantial evidence. Dodd v. City of Jackson, supra.

It is an understatement to say that conflict appears all through the testimony. The case was hard-fought, well-tried, and the attorneys' briefs are the product of much study and are excellent.... On the conflicting testimony, with lines tightly drawn between Biloxi and the objectors, he found evidence supporting the city's position on each of the criteria, and we are to consider the facts in the light most favorable to the chancellor's decree and resolve all conflicts in its favor. Clark v. Magee, 234 Miss. 252, 105 So.2d 753 (1958).
We have outlined criteria to help chancellors make their determinations:
"(1) The municipality's need for expansion; (2) Whether the area sought to be annexed is reasonably within the path of growth of the city: (3) The potential health hazards from sewage and waste disposal in the annexed areas; (4) The *404 municipality's financial ability to make the improvements and furnish municipal service promised. Lowe v. City of Jackson, 336 So.2d 490 (Miss. 1976); Bridges v. City of Biloxi, 253 Miss. 812, 178 So.2d 683 (1965); Dodd v. City of Jackson, 238 Miss. 372, 118 So.2d 319 (1960).
"Other facts that have been considered by the Court are: (5) The need for zoning and overall planning in the area; (6) The need for municipal services in the area sought to be annexed. Smith v. City of Meridian, 237 Miss. 486, 115 So.2d 323 (1959); (7) Whether there are natural barriers between the city and the proposed annexation area; and (8) The past performance and time element involved in the city's provision of services to its present residents. City of Biloxi v. Cawley, 332 So.2d 749 (Miss. 1976)." 365 So.2d at 624-25.
The burden of proving reasonableness as measured by these criteria was upon the petitioner, the City of Ridgeland. Dodd v. City of Jackson, 238 Miss. 372, 118 So.2d 319 (1960).
Extension of Boundaries of City of Ridgeland v. City of Jackson, 388 So.2d 152, 153 (Miss. 1980).
However, as we stated in Western Line Consolidated School District, "the common thread that must run through any reasonableness criteria is fairness." 465 So.2d at 1059.
The chancellor applied these criteria and found that the annexation was reasonable.
There is no doubt the evidence conflicted. We summarize the conflicting testimony.
Testimony conflicted concerning the city's need to expand. The city's expert, B.T. Page, testified that Horn Lake and its surrounding area had a projected population of 13,000 in the year 2000. The objectors' expert, Professor of Urban and Regional Planning Michael Bridge, testified that the city would have a population of only 7,664 in the year 2000 based on his calculations. There was undisputed testimony that some 1,078 empty residential lots remained in the city where homes could be built, but there was additional testimony that the developers had done little to encourage building or selling.
Objectors maintained that Horn Lake's path of growth was east and west as shown by a 1979 annexation to the east. However, Page's study showed that the areas of significant development lay outside the city's southern border.
There was little testimony concerning potential health hazards. The sewer system in the Churchwood Subdivision was superior to the septic tank system found in part of the city, and the septic tank system in the Church Road Estates had fewer problems than the city. Garbage collection in the annexation area was comparable but there was testimony that the privately funded system serving the area might be sold to the city of Southhaven, which it also served.
The financial condition of the city was found by the chancellor to be sound. At the time of the hearing the city had a $104,000 budget surplus. Page testified that bonds would be issued for the improvements suggested in the annexation area. If the city's growth completely stalled then projected annual increases in operating expenses might create large deficits, Page testified, but growth would likely continue.
There was little evidence of any need for planning or zoning and the chancellor made no specific finding on this point.
The trial court did find that the area proposed to be annexed would benefit from increased police protection because the ratio of officers per 1,000 residents was better in the city than in the county. The fire protection would improve because the Horn Lake Fire Department was better equipped than the volunteer unit serving the area and a proposed fire station would be added to serve the area and provide insurance savings of from $150 to $250 per homeowner.
The proposed area to be annexed could only benefit from the city's paving equipment, the trial court found.
*405 The only natural barrier in the area was a railroad line running north and south through the city.
The trial court heard testimony from Horn Lake Mayor Sam Dye and City Engineer Danny Rutherford concerning the city's extension of services to present residents and found the city's record acceptable.

II.

DID THE TRIAL COURT ERR IN FINDING THAT RECEIVING THE BENEFIT OF CITY SERVICES WITHOUT COST WAS A PARAMOUNT CONSIDERATION.
The trial court noted that the residents in the proposed annexation area received without cost the benefit of city services such as emergency dispatch, city maintenance for the regional library, city recreational facilities, and use of city hall for meetings. The objectors take the position that such incidental benefits should not be considered since we have not previouisly included this among our criteria. Objectors point to language of the chancellor which this Court quoted but did not adopt in Extension of Boundaries of City of Ridgeland v. City of Jackson, 388 So.2d 152, 156 (Miss. 1980). The chancellor noted that those who partake of a city's cultural advantages often leave substantial sums within the city which inures to the city's benefit.
Assuming without deciding that the chancellor incorrectly considered the free services and cultural advantages, we find there is still substantial credible evidence concerning our established criteria to support the chancellor's finding.

III.

DID THE TRIAL COURT IMPROPERLY RELY UPON FACTS DERIVED FROM THE 1976 ANNEXATION HEARING?
The objectors argue here that the chancellor improperly took judicial notice of differences between the City of Horn Lake as it existed at the time it attempted to annex Southhaven and at the time of the hearing. See Extension of the Boundaries of Horn Lake v. Renfro, 365 So.2d 623 (Miss. 1978). The objectors argue that through this the chancellor supplied facts essential to his judgment from another case. See Bridgeman v. Bridgeman, 192 Miss. 800, 802, 6 So.2d 608, 610 (1942). We do not agree. The language quoted by the objectors may be read as a statement by the chancellor distinguishing his decision in this case from his decision in Renfro. We think the chancellor merely explained why he reached a different result. We find no merit in this contention.

IV.

DID THE CHANCELLOR SHIFT THE BURDEN OF PROOF TO THE OBJECTORS?
Here the objectors contend that the chancellor's statement of his findings and conclusions demonstrates that the court shifted the burden onto them to overcome the city's proof concerning the need for expansion. Specifically, they contend that the chancellor found that the objectors failed to overcome the city's proof that the numerous vacant residential lots were not being developed by the owners. The objectors are correct that this finding does not necessarily make the annexation reasonable. However, we think the chancellor's finding could be read as only making reference to what he found was substantial evidence presented by the city which the objectors failed to rebut. We think this was merely a statement that the trial court rejected the objectors conflicting testimony, which he had every right to do. This assignment is without merit.

V.

THE TRIAL COURT ERRED IN HOLDING THAT THIS CASE IS GOVERNED BY MISS. CODE ANN. § 21-1-13.
The parties agree that this case is controlled by Miss. Code Ann. § 21-1-33 *406 (1972). There is no question that the chancellor applied § 21-1-33 and not § 21-1-13.
We have carefully reviewed the record and cannot find manifest error in the chancellor's finding of reasonableness based on our established criteria. We therefore affirm.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.