STATE of Alaska, Appellant/Cross–
Appellee,

v.

UNITED COOK INLET DRIFT ASSOCIA-
TION, Kenai Peninsula Sportsman's As-
sociation, Ronald Cox, Timothy Moore,
and Henry Wojtusik, Appellees,

Ninilchik Traditional Council,
Appellee/Cross–Appellant.

Nos. S–4966, S–4967.

Supreme Court of Alaska.

May 12, 1995.

Lauri J. Adams, Sarah E. Gay and Jenifer A. Kohout, Asst. Attys. Gen., Anchorage, Charles E. Cole, Atty. Gen., Juneau, for appellant/cross-appellee.

Eric Smith, Anchorage, for appellee/cross-appellant.

Michael A.D. Stanley, Juneau, for appellees.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

### ORDER

IT IS ORDERED:

1. Opinion No. 4054, issued on February 18, 1994, is WITHDRAWN.

2. The opinion on rehearing, Opinion No. 4195, is issued today in its place.

Entered by direction of the court at Anchorage, Alaska on May 12, 1995.

Before: MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

### OPINION ON REHEARING

RABINOWITZ, Justice.

## I. BACKGROUND

In *McDowell v. State*, 785 P.2d 1 (Alaska 1989), this court determined that the preference given to rural residents under Alaska's subsistence laws to harvest Alaska's fish and game resources violated sections 3, 5, and 17 of article VIII of the Alaska Constitution. *Id.* at 9. On remand the superior court held that the rural preference provisions were severable from the remaining subsistence provisions. The Attorney General's office subsequently advised the Alaska Department of Fish and Game and the Joint Boards of Fisheries and Game that where harvestable surpluses of a stock were sufficient to satisfy all subsistence uses of that stock, any Alaskan who desired to participate in the subsistence use of that fish or game stock was eligible to do so.

On October 28, 1990 the Joint Boards of Fisheries and Game adopted Policy Statement No. 90–18–JB, on the premise that they had "no other option than to apply the standard that all Alaskans are now eligible subsistence users under Tier I during the upcoming regulatory cycle." Pursuant to this "all-Alaskan" policy, the Board of Fisheries adopted regulations that codified subsistence

salmon fishery management plans for coho salmon in Cook Inlet's Southern District and for all salmon species in the Northern and Central Districts. *See* 5 Alaska Administrative Code (AAC) 01.596 (repealed 1993); 5 AAC 01.598 (repealed 1993).

Prior to the scheduled effective date of these regulations, United Cook Inlet Drift Association (UCIDA) filed suit seeking declaratory and injunctive relief regarding 5 AAC 01.596 and 5 AAC 01.598. UCIDA sought a declaration that the regulations were invalid and unenforceable "because they are based on a policy statement of the Board of Fisheries that in another action has been held invalid and of no force and effect."[1]

The prior action to which UCIDA refers is *Morry v. State*, No. 2BA–83–87 Civ. (Alaska Super., May 23, 1991), in which Judge Michael I. Jeffery issued a partial final judgment pursuant to Alaska Civil Rule 54(b). This partial final judgment provided in relevant part:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that any policy statement by the Joint Boards of Fisheries and Game, or the Board of Game individually, declaring that "all Alaskans are now eligible subsistence users" is invalid and of no force and effect unless interpreted to mean that "all Alaskans are *eligible to be considered* subsistence users" *if*, prior to the subsistence hunting, their individual use of the fish or game meets criteria for "noncommercial, customary and traditional" subsistence uses of the particular fish and game population being harvested, under criteria established by regulation

such as 5 AAC 99.010(b). *McDowell v. State*, 785 P.2d 1, 11 (Alaska 1989).

The Ninilchik Traditional Council (Ninilchik) moved to intervene in the present action, contending that the challenged regulations adversely affected the subsistence lifestyle and culture of its members. Ninilchik's motion was subsequently granted.[2]

In its decision, the superior court concluded that the same all-Alaskan policy statement being challenged in this case had been previously considered and held invalid in *Morry*. The superior court observed that Judge Jeffery's invalidation of the all-Alaskan policy was not confined to the facts of *Morry*. The superior court further held that it was bound by application of the doctrine of collateral estoppel to follow Judge Jeffery's ruling invalidating the all-Alaskan policy.[3] Based on Judge Jeffery's ruling, the superior court granted final judgment to UCIDA on Count I of its complaint:

5 AAC 01.596 and .598 are declared invalid for the reason that the state is collaterally estopped from asserting their validity because of the decision of [Judge Jeffery] in *Morry v. State*, 2BA–83–87 Civ., in which that court invalidated the Alaska Board of Fisheries and Game's policy that "all-Alaskans [sic] are eligible to participate in subsistence uses."

Following the entry of final judgment, both UCIDA and Ninilchik moved for awards of full attorney's fees on the ground that they were public interest litigants. The superior court denied the motions for full fees, but awarded partial fees of $4,237.50 to UCIDA and $3,206.25 to Ninilchik.

---

1. In its superior court complaint UCIDA also asserted that the regulations were invalid because they were inconsistent with existing subsistence statutes and were not adopted in conformity with the Administrative Procedure Act, AS 44.62.

After the complaint was filed the superior court issued a temporary restraining order prohibiting the State from implementing the Upper Cook Inlet Subsistence Management Plan, 5 AAC 01.598. The State then petitioned for review. We granted the petition and reversed because the superior court had failed to consider the potential injury to subsistence users that would result from issuance of a T.R.O., and on the further ground that AS 16.05.258(c) granted a preference to subsistence users over commercial users.

*State v. United Cook Inlet Drift Ass'n*, 815 P.2d 378, 379 (Alaska 1991).

2. The superior court concluded that Ninilchik met requirements for intervention set out in Civil Rule 24(a) and *State v. Weidner*, 684 P.2d 103, 113–14 (Alaska 1984).

3. In so holding the superior court determined that UCIDA met requirements for application of the doctrine of collateral estoppel identified in *Murray v. Feight*, 741 P.2d 1148, 1153 (Alaska 1987). The superior court further concluded that the State was afforded a full and fair opportunity to litigate the validity of the all-Alaskan policy in the *Morry* case.

The State has appealed from the superior court's invalidation of the "all-Alaskan" policy. Ninilchik has cross-appealed from the superior court's refusal to award it full reasonable attorney's fees on the basis of its status as a public interest litigant.[4]

## II. NON–MUTUAL COLLATERAL ESTOPPEL

### A. Standard of Review

■ This court is not bound by the superior court's resolution of questions of law. Rather we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy. *Ford v. Municipality of Anchorage*, 813 P.2d 654, 655 (Alaska 1991). The applicability of collateral estoppel to a particular set of facts is a question of law subject to independent review. *Rapoport v. Tesoro Alaska Petroleum Co.*, 794 P.2d 949, 951 (Alaska 1990).

### B. Mootness

The parties disagree on whether the disputed legal issue underlying the State's appeal is moot. Judge Jeffery's ruling in *Morry* invalidating the "all-Alaskan" policy was later overruled in *State v. Morry*, 836 P.2d 358 (Alaska 1992). Therefore, UCIDA and Ninilchik contend that the superior court's judgment in this case is now moot.[5] The State argues that even if we conclude that

the non-mutual offensive collateral estoppel issue is technically moot, we still should consider it under our discretionary review authority.

■ This case is not moot. The underlying judgment of the superior court exists until it is vacated by the superior court or vacated or reversed by this court. We do so in this case based on our decision in *Morry*.

■ The question that may be moot is the propriety of using non-mutual collateral estoppel against the State. As to this question, we think the State's arguments are persuasive. Assuming this aspect of the case has been mooted by subsequent developments, we conclude that the question of the application of non-mutual collateral estoppel against the State should be addressed under the public interest exception to the doctrine of mootness.[6]

### C. Application of Non–Mutual Offensive Collateral Estoppel Against the State [7]

There are three requirements for application of collateral estoppel:

(1) The plea of collateral estoppel must be asserted against a party or one in privity with a party to the first action;

(2) The issue to be precluded from relitigation by operation of the doctrine must

---

4. Ninilchik raised several other issues on cross-appeal, but has chosen not to pursue them. UCIDA does not appeal from the denial of full attorney's fees.

5. UCIDA and Ninilchik also note that the legislature subsequently amended the subsistence laws, Ch. 1, 2d Special Sess., SLA 1992. "The Cook Inlet subsistence salmon regulations at issue in this case have been reinstated, and there is now no case or controversy concerning the all Alaskans policy underlying those regulations."

6. The test for application of the public interest exception to the mootness doctrine involves three main factors: "(1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may repeatedly circumvent review of the issues and, (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine." *Hayes v. Charney*, 693 P.2d 831, 834 (Alaska 1985); *see also Peninsula Mktg. Ass'n v.*

*State*, 817 P.2d 917, 920 (Alaska 1991). In our view, the State persuasively demonstrates that the issue here meets all three requirements for invocation of the public interest exception to the mootness doctrine.

7. Relitigation of issues that have been litigated and determined in an earlier action by a final judgment is precluded by application of collateral estoppel. *DeNardo v. Municipality of Anchorage*, 775 P.2d 515, 517 (Alaska), *cert. denied*, 493 U.S. 922, 110 S.Ct. 287, 107 L.Ed.2d 267 (1989). Offensive use of collateral estoppel occurs where a plaintiff seeks to preclude a defendant from relitigating an issue that the defendant previously litigated unsuccessfully against the same or a different party. *United States v. Mendoza*, 464 U.S. 154, 159 n. 4, 104 S.Ct. 568, 571 n. 4, 78 L.Ed.2d 379 (1984). Defensive use of collateral estoppel occurs where a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or different party. *Id.*

be identical to that decided in the first action;

(3) The issue in the first action must have been resolved by a final judgment on the merits.

*Murray v. Feight,* 741 P.2d 1148, 1153 (Alaska 1987). Although we have abandoned the requirement of mutuality of parties, we have stated that "[i]f the particular circumstances of the prior adjudication would make it unfair to allow a person who was not a party to the first judgment to invoke ... collateral estoppel then the requirement of mutuality must still be applied." *Pennington v. Snow,* 471 P.2d 370, 377 (Alaska 1970), *limited on other grounds by Kott v. State,* 678 P.2d 386, 391–93 (Alaska 1984) (declining to abandon mutuality requirement in criminal cases); *see also Pruitt v. State, Dep't of Pub. Safety,* 825 P.2d 887, 890 (Alaska 1992).

### 1. *The Mendoza Exception*

■ The State concedes that the three requirements for the application of collateral estoppel identified in *Murray* are present in the instant case.[8] The State initially argued,[9] however, that considerations of basic fairness and the policy reasons endorsed by the U.S. Supreme Court in *United States v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), support a reversal of the

superior court's application of non-mutual offensive collateral estoppel against the State.

We decline to adopt the *Mendoza* exception which would preclude in all cases, the offensive use of collateral estoppel against the State. The exception to this doctrine which the *Mendoza* court created was one especially fashioned for the federal government as a litigant.[10] In *Mendoza* the U.S. Supreme Court identified the following factors that militated against application of non-mutual offensive collateral estoppel against the United States government:

(1) the desirability of "permitting several courts of appeals to explore a difficult question before this Court grants certiorari;"

(2) the government's need for flexibility in determining when to appeal; and

(3) the importance of preserving policy choices for successive administrations.

*Id.* at 160–61.

We think UCIDA's and Ninilchik's arguments distinguishing state litigation from federal litigation in the context of these three factors are persuasive. As to the first factor, they note that in contrast to a federal district court, the superior court's jurisdiction is statewide,[11] and that since a litigant in Alaska can appeal as a matter of right, there is

---

8. The State's concession reads in part: "[T]he state was a party to the prior *Morry* litigation, the issue of the 'all-Alaskan' interpretation of the subsistence statute was identical, and there was a final judgment on the merits in the superior court[]."

9. The State argued that we should adopt the *Mendoza* exception when we initially heard this case. Pursuant to this court's order dated March 3, 1994, the State limited its argument on rehearing to the question of whether we should adopt the narrower exception to collateral estoppel for unmixed questions of law. We address this argument *infra* Part II.C.2.

10. In *Mendoza* the U.S. Supreme Court stated:

We have long recognized that "the Government is not in a position identical to that of a private litigant," both because of the geographic breadth of Government litigation and also, most importantly, because of the nature of the issues the Government litigates. It is not open to serious dispute that the government is a

party to a far greater number of cases on a nationwide basis than even the most litigious private entity.... Government litigation frequently involves legal questions of substantial public importance; indeed, because the proscriptions of the United States Constitution are so generally directed at governmental action, many constitutional questions can arise only in the context of litigation to which the Government is a party....

A rule allowing nonmutual collateral estoppel against the Government in such cases would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue. Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari.

464 U.S. at 159–60, 104 S.Ct. at 572 (citation omitted).

11. AS 22.10.020(b).

no need to let an issue percolate prior to authorizing an appeal.[12]

Concerning the second factor, the State's attempt to equate the functions of Alaska's Attorney General with those of the United States Solicitor General does not withstand scrutiny. Unlike the Solicitor General, Alaska's Attorney General essentially litigates in a single jurisdiction and is faced with a much smaller volume of litigation. Consequently, the need to authorize appeals of only the strongest cases is not as compelling as it is in the diverse federal judicial system.

As to the third *Mendoza* factor, preserving policy choices for successive administrations, we agree with UCIDA and Ninilchik that this factor does not carry significant weight. Given the wide variety of options a new state administration has in regard to pursuing its own policy initiatives, we are not persuaded that this factor compels adoption of the *Mendoza* exception.[13] We conclude that the State's argument for adoption of the *Mendoza* exception for the state government to the application of nonmutual collateral estoppel should be rejected.

12. UCIDA also notes that any potential benefit that Alaska courts might derive from relitigating legal issues would be minimal, since superior court opinions are generally unpublished and therefore not readily available throughout the Alaska judicial system.

13. Federal courts in New York also have declined to extend the *Mendoza* exception to state government, on the ground that the factors warranting the federal exception did not apply to the state. *See Benjamin v. Coughlin*, 708 F.Supp. 570, 573 (S.D.N.Y.1989), *aff'd*, 905 F.2d 571, 576 (2d Cir.), *cert. denied*, 498 U.S. 951, 111 S.Ct. 372, 112 L.Ed.2d 335 (1990).

14. The State limits its argument, and we limit our holding to "unmixed questions of law." This should be distinguished from mixed questions of law and fact, which the State concedes it may be collaterally estopped from relitigating. We decline today to decide whether this exception ought to apply to private litigants other than the government.

15. Adopting the Restatement view, the United States Supreme Court has noted that "when issues of law arise in successive actions involving unrelated subject matter, preclusion may be inappropriate." *Montana v. United States*, 440 U.S. 147, 162, 99 S.Ct. 970, 978, 59 L.Ed.2d 210 (1979). The weight of authority amongst state courts which have considered the issue also fa-

## 2. The Exception for Unmixed Questions of Law

■ Alternatively, the State contends on rehearing that the weight of authority as well as sound policy justifications support the adoption by this court of a limited exception to the application of collateral estoppel against the State on "unmixed questions of law."[14] We agree.

The Restatement (Second) of Judgements § 29(7) (1982) states that even when all the prerequisites for non-mutual collateral estoppel are present, a party should be permitted to relitigate an issue if it "is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based."[15] Such reconsideration would be appropriate, for example, where independent developments in the area of law at issue call into question the legal underpinning of the earlier rule.[16] Alternatively, application of a prior rule to an unanticipated factual circumstance may illuminate an area of law and suggest an alternative formulation of the rule as the wiser course.[17] The exception is also appropriate where strict applica-

vors our adoption of an exception for unmixed questions of law. *See City of Sacramento v. State*, 50 Cal.3d 51, 266 Cal.Rptr. 139, 785 P.2d 522, 528–29 (1990); *Revenue Cabinet v. Samani*, 757 S.W.2d 199, 202 (Ky.App.1988); *Torres v. Village of Capitan*, 92 N.M. 64, 582 P.2d 1277, 1281 (1978); *McGrath v. Gold*, 36 N.Y.2d 406, 369 N.Y.S.2d 62, 330 N.E.2d 35, 38 (1975); *Southcenter v. National Democratic Policy Comm.*, 113 Wash.2d 413, 780 P.2d 1282, 1285 (1989) ("relitigation of an important issue of law should not be foreclosed by collateral estoppel"). *But see In re Trusts Created by Hormel*, 504 N.W.2d 505, 510 (Minn.App.1993).

16. This might result from a statutory change, the adoption of new administrative regulations, or as the result of an appellate decision. *See, e.g., Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 599–600, 68 S.Ct. 715, 720, 92 L.Ed. 898 (1948) (preclusion should be limited to such situations "where the controlling facts and applicable legal rules remain unchanged.... [A] judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable."); *Del Rio Distrib., Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 (5th Cir.) (held that an antitrust defendant was not precluded from relitigating an issue that had been resolved according to precedent that had subsequently been overruled by the Supreme Court), *cert. denied*, 444 U.S. 840, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979).

17. Like the Restatement, we choose not to create an exhaustive list of circumstances in which col-

tion of the bar of collateral estoppel might foreclose the highest court of the state from performing its function of developing the law. This consideration is especially applicable as to questions of general interest such as that presented in this case, eligibility to participate in subsistence hunting and fishing.[18]

The official commentary to this section of the Restatement notes that "it is also pertinent that the party against whom the rule of preclusion is to be applied is a government agency responsible for continuing administration of a body of law applicable to many similarly situated persons." Restatement (Second) of Judgements § 29 cmt. i (1982). Thus the Restatement recognizes the unique position of the states amongst litigants in their respective court systems. First, the State is the most frequent litigator and it is therefore most likely to be bound by collateral estoppel if the rule were strictly enforced.[19] Second, in pursuing litigation the State has a duty to consider not only its own best interests but also obtaining an outcome which is both in the public's interest and

equitable to the parties involved.[20] Because the State is often required to litigate the same legal issue against numerous parties in different factual contexts, achieving these ends of substantial justice may require the State to argue that different legal rules ought to be applied in different cases.[21]

 The adoption of this exception to collateral estoppel does not result in the absence of any restraints on the State's ability to advance inconsistent legal arguments in different cases. As noted by both the State and the authors of the Restatement, the judicial doctrine of *stare decisis* accords the prior holdings of the highest courts of this State precedential value while still permitting the reconsideration of legal issues when conditions warrant.[22] Thus, the State will generally be bound by the prior resolution of a particular legal issue if it attempts to raise the issue again against a different party. Additionally, as is made clear in *Montana v. United States*, 440 U.S. 147, 162, 99 S.Ct. 970, 978, 59 L.Ed.2d 210 (1979), this excep-

lateral estoppel would not apply, but rather leave it to the trial court's discretion to determine when such an opportunity would be appropriate. Restatement (Second) of Judgements § 29 cmt. *b* (1982) ("What combination of circumstances justifies withholding preclusion is a matter of sound discretion,...."); *see also, Consumers Lobby Against Monopolies v. Public Utilities Comm'n*, 25 Cal.3d 891, 160 Cal.Rptr. 124, 130, 603 P.2d 41, 47 (1979) ("when the issue is a question of law rather than of fact, the prior determination is not conclusive either if injustice would result or if the public interest requires that relitigation not be foreclosed").

**18.** Concerning this rationale, Restatement (Second) of Judgments § 29 cmt. *i* (1982) states:

If the rule of issue preclusion is applied, the party against whom it is applied is foreclosed from advancing the contention that *stare decisis* should not bind the court in determining the issue. Correlatively, the court is foreclosed from an opportunity to reconsider the applicable rule, and thus to perform its function of developing the law. This consideration is especially pertinent when there is a difference in the forums in which the two actions are to be determined, as when the issue was determined in the first action by a trial court and in the second action will probably be taken to an appellate court; when the issue was determined in an appellate court whose jurisdiction is coordinate with or subordinate to that of an appellate court to which the second action can be taken; or when the issue is of general

interest and has not been resolved by the highest appellate court that can resolve it.

**19.** The State also argues that strict application of collateral estoppel would force it to appeal cases which it might otherwise not appeal simply because there was an unfavorable legal ruling which might bind it in future litigation. This would occur, for example, where the State was the prevailing party on the main issue but lost on a secondary issue, where the parties would otherwise be able to reach a post-judgment settlement in lieu of an appeal, or where the equities of the individual case did not otherwise merit the pursuit of an appeal.

**20.** *See Public Defender Agency v. Superior Court*, 534 P.2d 947, 950 (Alaska 1975) ("Under the common law, an attorney general is empowered to bring any action which he thinks necessary to protect the public interest, and he possesses the corollary power to make any disposition of the state's litigation which he thinks best.") (citation omitted).

**21.** *See* Geoffrey C. Hazard, Jr., *Preclusion as to Issues of Law: The Legal System's Interest*, 70 Iowa L.Rev. 81, 92 (1984).

**22.** Restatement (Second) of Judgements § 29 cmt. *i* (1982) ("When the issue involved is one of law, stability of decision can be regulated by the rule of issue preclusion or by the more flexible rule of *stare decisis*."); *see also Pratt & Whitney Canada, Inc. v. Sheehan*, 852 P.2d 1173, 1175 (Alaska 1993) ("*stare decisis* is a practical, flexi-

tion only applies where the two cases involve "unrelated subject matter."[23] This limitation assures both that individuals who have litigated an issue against the State will obtain a degree of repose, and that finality is achieved with respect to a law's application to a particular set of facts.

Although one of the preeminent values which the legal system seeks to obtain—and one of the primary justifications for the application of collateral estoppel[24]—is consistency, it should not come at the cost of obtaining substantial justice in individual cases or stunting the evolution of legal doctrine. We believe the more flexible approach we adopt today strikes the proper balance between these conflicting ends. We therefore hold that the parties may not bar the State from relitigating "unmixed questions of law" through the use of collateral estoppel.

## III. CONCLUSION

 The superior court's entry of final judgment on Count I of UCIDA's complaint is reversed based on *State v. Morry,*

836 P.2d 358 (Alaska 1992). We have considered and rejected the State's contention that it should be exempted from application of the doctrine of non-mutual offensive collateral estoppel. However, we hold that the State is permitted to relitigate unmixed questions of law so long as the subject matter of the second case is "substantially unrelated" to that of the first. Whether Ninilchik is a public interest litigant entitled to recover full reasonable attorney's fees against the State is a moot question, since, in view of our disposition herein, the State was the prevailing party and public interest litigants who are not prevailing parties are not entitled to an award of attorney's fees.[25]

BURKE,* J., not participating.

---

ble command that balances our community's competing interests in the stability of legal norms and the need to adapt those norms to society's changing demands").

23. For example, in *United States v. Stauffer Chem. Co.,* 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984), the E.P.A. sought to enforce an administrative warrant authorizing private contractors to enter a Stauffer facility. At issue was the question of whether a private contractor was an "authorized representative" under § 114(a)(2) of the Clean Air Act. The E.P.A. had previously litigated the same issue against Stauffer in a different federal circuit. The U.S. Supreme Court held that the federal government was collaterally estopped from bringing the second action against the same party where the two actions involved essentially similar facts. The court noted that whatever the policy arguments in favor of allowing the government to relitigate the issue "applying an exception to the doctrine of mutual defensive estoppel in this case would substantially frustrate the doctrine's purpose of protecting litigants from burdensome relitigation and of promoting judicial economy." *Id.* at 172.

24. Professor Motomura cites three goals that are commonly advanced in support of giving collateral estoppel effect to prior judgments: (1) efficiency, (2) repose, and (3) consistency. Hiroshi

Motomura, *Using Judgments as Evidence,* 70 Minn.L.Rev. 979, 1003–04 (1986).

25. Though our holding makes the State the prevailing party in this case, the State cannot recover attorney's fees from Ninilchik. We have consistently denied awards of attorney's fees against losing parties who have in good faith litigated issues of genuine public interest. *See Oceanview Homeowners Ass'n v. Quadrant Constr. & Eng'g,* 680 P.2d 793, 799 (Alaska 1984); *Anchorage v. McCabe,* 568 P.2d 986, 989–90 (Alaska 1977); *Gilbert v. State,* 526 P.2d 1131, 1136 (Alaska 1974).

We have previously rejected arguments that subsistence use constitutes a private interest sufficient to deny public interest status. *Alaska Survival v. State, Dep't of Natural Resources,* 723 P.2d 1281, 1292 (Alaska 1986). If a litigant relies on hunting, fishing, and gathering resources "for personal rather than commercial purposes," then the party's economic interests are not so "substantial" that he or she would not qualify as a public interest litigant. *Id.* Under *Alaska Survival,* Ninilchik satisfies our test for determination of public interest status.

* Justice Burke participated in the original oral argument and decision of this case, but has since resigned from the court and did not participate in the rehearing of this matter.