IN RE BOUNDARIES OF CITY OF PHILADELPHIA

No. 40758          January 27, 1958          100 So. 2d 100

*Laurel G. Weir, W. T. Weir,* Philadelphia, for appellants.

*Sanford & Alford,* Philadelphia, for appellee.

LEE, J.

The Mayor and Board of Aldermen of the City of Philadelphia, Mississippi, at a regular meeting on October 2, 1956, acting under the authority of the provisions of Chapter 491, Laws of 1950, Section 3374-10, et seq., Code of 1942 Rec., adopted an ordinance extending the corporate limits of the city so as to add 1360 acres of land thereto. The ordinance enumerated the municipal or public services to be furnished immediately to the added territory, and the improvement to be made therein within a reasonable time, not to exceed five years. Thereafter, in compliance with the ordinance, and, as provided by the law, a petition, together with a copy of the ordinance and a plat of the area, was filed in the Chancery Court of Neshoba County, for ratification, approval and confirmation by the court. The date of the hearing was fixed by the chancellor and due notice thereof was given.

On the return day three sets of objectors, John H. Lundy, et al., W. R. Burkes, et al., and A. DeWeese Lumber Company, Inc., filed their objections to the confirmation. The first two named sets of objectors challenged the financial ability of the city to furnish the benefits stated in the ordinance. They alleged that the ordinance was neither reasonable nor feasible, and averred that the proposed services were not needed or demanded in such territory. The third objector, owning approximately 30 acres in the added area, contended that such area was sparsely settled, that there was no need for the construction of additional streets therein, that ample police protection was afforded by the county, and that some of its land was unfit for residential, business or industrial development.

After the disposition of demurrers and other preliminary matters, on the merits a mass of evidence, both oral and documentary, was adduced for and against the ratification.

The ultimate effect of the evidence for the City was that it is now in position to provide reasonable police and fire protection, removal of garbage, maintenance of existing streets, school facilities, water sprinkling of streets during dry weather, city electricity, and improvement of health and sanitary conditions. Actually most of the children in the added territory already attend the city schools, and the inhabitants now get their water and electricity from the city. The evidence was further to the effect that the city, within three to five years, would be able to grade and drain existing streets; and, where necessary and economically feasible, construct streets, water lines, sewage disposal lines, and provide street lights. This evidence included a survey and maps, prepared by an engineer, giving in detail the proposed improvements and the design and location thereof. The estimated cost of the sewer disposal lines was $171,651.-15. The proof also showed that there were 317 residences and 42 industrial establishments in the area to be added, and that much of the territory was thickly settled.

Ray Gipson, a certified public accountant, made an audit of the records of the City for the year 1956, and testified that the last completed assessment of realty, personalty, and public service corporations aggregated $4,429,143. At the date of the trial, based on ten percent of the assessed valuation, the city could issue additional bonds in the amount of $140,914, but within five years, the permitted amount would increase to $241,714. On a fifteen percent debt limitation, bonds in the amount of $362,371 could be issued at the time, and within five years the permitted amount would increase to $463,171.

In most of the area city water is now available, but the sewer lines do not now extend beyond the city limits;

and there was evidence that the septic tanks and open toilets, utilized in the added territory, constitute a hazard to health and sanitation. Moreover the discharge of sewage in certain parts of the territory flows into the city. There was evidence for the city that sewage disposal is available to ninety percent of the inhabitants within the city itself.

For the objectors, there was evidence to the effect that it is wholly unnecessary and unreasonable to incorporate certain parts of the proposed acreage into the city; that such areas are not suitable for residence, business or industrial purposes; and that no services from the city are necessary. Certain objectors testified to lack of streets, water and sewerage facilities within the present corporate limits, the inference being that if the city was not furnishing such services to its present inhabitants, it could not be expected that such services would be made available for those who are living in the extension.

One witness for the objectors, living within the city, testified without objection that he would vote against a bond issue to provide benefits for the proposed area. When another witness testified after the same tenor and effect, the city objected and the objection was sustained. Counsel for the objectors then offered to prove by other witnesses that, in their opinion, a majority of the qualified electors, both in the corporate limits and in the proposed extension, would not now or in the future vote for a bond issue to profide the proposed benefits.

The chancellor, in addition to hearing all the evidence, oral and documentary, viewed the area proposed to be incorporated within the city. At the conclusion of the trial he made written findings of fact and conclusions of law. He held that only 430 of the proposed 1360 acres should be annexed to the city, and that the enlargement, modified to conform to such finding, is reasonable and is required by the public convenience and necessity. He was of the opinion that the excluded 930 acres will not

be needed within the foreseeable future, and that the cost of improvements therein would be prohibitive at this time.

The final decree of ratification, approval and confirmation, was in conformity with the finding of fact and particularly described the added territory and the boundaries of the city as altered, in accordance with the statute. A number of the objectors appealed.

Separate briefs have been filed by separate counsel for the appellants.

The appellants contend that the decree of the court is contrary to the law and the overwhelming weight of the evidence.

Of course, the burden of proof was on the city to establish that its proposal was reasonable and required by the public convenience and necessity. In Re Extension of the Boundaries of the City of Indianola, 85 So. 2d 212; Spears v. City of Oxford, 87 So. 2d 61. The court had the power to decrease the territory to be included, Section 3374-13, Code of 1942 Rec., and was amply justified from the evidence in finding that the enlargement, as modified, is reasonable and is required by the public convenience and necessity.

The appellants say that it was error to permit Ray Gipson to testify unless his evidence was further qualified. This witness had BS and MS Degrees from Mississippi State College, passed the examination given to certified public accountants by the State Department of Public Accountancy, and had been certified as an accountant under Section 8908, Code of 1942. He made the 1956 audit himself and obviously no further qualification was necessary.

The appellants also argue that it was error for the court to refuse to hear opinion evidence that a majority of the qualified electors, both in the city proper and in the added territory, would vote both now and in the future against a bond issue to provide the municipal

services. Counsel cite no applicable authority for this position. Actually no man is such a seer that he can look into the future and tell how people in the City of Philadelphia, or in the added area, will vote on a given bond issue, today, a year from now, or five years from now. Such opinions would be too speculative and conjectural to amount to proof.

No reversible error appears in the record, and the decree must be affirmed.

Affirmed.

*Roberds, P. J.,* and *Holmes, Arrington* and *Ethridge, JJ.,* concur.