## IN RE EXTENSION OF BOUNDARIES OF CITY OF MERIDIAN

SMITH *v.* CITY OF MERIDIAN, MISS.

No. 41297 November 2, 1959 115 So. 2d 323

*Williamson, Williamson & Smith; Miller & Adams,* Meridian, for appellants.

*Ethridge, Minniece & Bourdeaux,* Meridian, for appellee.

ARRINGTON, J.

This is an appeal from a decree of the Chancery Court of Lauderdale County extending the corporate limits of the City of Meridian.

On August 5, 1958, the City Council of the City of Meridian, acting under the provisions of Sections 3374-10, et seq., of Chapter 491 of the Laws of 1950, (Vol. 3, Recompiled, Code of 1942), passed an ordinance extending the corporation limits of the City. The ordinance enumerated the improvements to be made as follows: "Maintenance of existing streets; installing water and sewer lines and street lighting where necessary and economically feasible. Said improvements are to be completed within a reasonable time, not to exceed five (5) years from the effective date of this ordinance unless delayed by war or military preparedness restrictions. That the said City of Meridian shall furnish to the said annexed territory the following municipal or public services beginning on the effective date of this ordinance, to-wit: Police protection; fire protection; garbage removal; maintenance of existing streets; reduction of water rates to the rates which are effective within the present corporate limits of the City of Meridian."

On September 5, 1958, the City filed a petition in the Chancery Court of Lauderdale County, and a certified copy of the ordinance adopted and a plat of the area were attached as exhibits. The City prayed that the enlargement of the city boundaries be ratified, approved, and confirmed by the court. The date of the

hearing was fixed by the chancellor and due notice thereof was given. A large number of citizens filed their objections to the proposed extension. After a lengthy hearing was held by the chancellor, the proposed extension of the boundaries was ratified and approved as modified. From this decree, the appellants, George W. Askew, et al., Ray L. Parker, et al., Mrs. Lola Mae Lockley, Mrs. Annie Waddell, and Mrs. Louise Smith, appeal.

The City put on its proof generally as to all the area to be included, and later put on proof as to the specific areas involved, and the objectors likewise put on their proof as to the particular areas. The census of the City of Meridian was stipulated: That in the year 1880 there was a population of 4,008; that there has been a steady increase in population since that time, and in 1940, it was 35,481; in 1950, 41,893. It was estimated that in 1955 the population was 47,000, and with the proposed city extension included, there would be a population of 53,000. According to the statement of appellee in its brief, the proposed extension would extend the city limits an average of three-fourths of a mile in all directions; and that the modification of the proposed extension by the chancellor eleminated approximately 1280 acres.

According to the proof of the City, it had ample equipment and machinery, which would be adequate to maintain the streets and roads in the proposed territory to be taken in; that in 1957, the City employed engineers to plan an expansion of the water system for the City. The engineers employed were instructed to plan for a city of 76,000 to 80,000 people and their plans included all the territory of the proposed extension. According to the evidence, the expansion program was to be in three priorities: That ninety-five percent of the first priority was under construction; two or three items in the second priority were under contract and construction had started; the third priority was the replacement of existing water mains in order to bring them up to stand-

ard. A map was introduced showing the proposed plans for the water enlargement program. Evidence was also offered by the City as to the sewage treatment plant and distribution system. According to the testimony of the engineer, the sewage plant is now under construction. A map was introduced in evidence showing the sewer system lines and the system in general, which were sufficient for the City and the proposed extended territory.

The city clerk and treasurer testified as to the financial condition of the City of Meridian. The financial report for the physical year ending September 30, 1958 was introduced in evidence. The evidence is to the effect that the City of Meridian is an excellent financial condition and well able to carry out its program in the extended territory. The outstanding general obligation bonds of the City at that time were $755,000; the assessed valuation was approximately $53,000,000; the other bonded indebtedness included industrial bonds, special assessment bonds, and water and sewer revenue bonds. The testimony showed that the city had never defaulted on its obligations and had not refunded any bonds since 1950.

Evidence was introduced showing that the city could provide ample fire and police protection to the proposed extended territory. All of the territory in the proposed extension is within the Meridian Separate School District with the exception of the Bonita area and a small area in the northwest; all the children in this area attend the Meridian Schools.

As to the Askew area, it was shown that this was a community of approximately 240 acres west of the City; that there were 64 houses in this area, and that the owners of the homes furnished their own water from deep wells and had their own sewage, which was septic tanks; that they had natural gas; that the conditions in the area were clean and sanitary; that they were satisfied under present conditions; that the city had nothing to

offer them; and that they would receive no benefits by being in the city; that they needed no police protection and that fire protection was furnished by the City of Meridian free of charge. Their testimony was that the expense of a deep well and spetic tanks amounted to more than the sum of $1,000; that the roads were maintained by the county and state; that they were all satisfied and were trying to keep out of the city. The evidence also revealed that the people of this area were paying $18.00 per year for removal of garbage.

As to the Bonita area, Ray L. Parker, et al., this is a thickly settled community east of the City of Meridian and was approximately 300 acres. The evidence shows that there were 105 homes and seven subdivisions therein. According to the testimony of Mr. Parker, this was an old community; that it had a post office, two churches, one store and a community center; that the residents have their own utilities, although the water is furnished by the city and for that they have to pay a double rate; that they have their own sewage, septic tanks. He also testified that 64 acres of this area was low and flat and was not suitable for buildings, but was considered pasture land.

As to these two areas, there was evidence on the part of the City that it was ready to furnish immediate police and fire protection, insect fogging, and garbage collection. In the Askew area, the evidence was that the City could furnish water and sewage and better fire protection with the addition of fire plugs within sixty to ninety days, and water and sewage in the Bonita area in the near future. Other benefits would be a substantial reduction in insurance rates, and a reduction of one-half in water rates.

As to the Waddell-Lockley area and the Louise Smith area, the facts were stipulated. The evidence for the City was that these areas would be furnished the same benefits as the other areas in the future when it was required.

The record shows that the chancellor viewed all the area protested and found that the proposed enlargement of the boundaries was "reasonable and required by the public convenience and necessity as modified. . . ."

■■ ■ The appellants assign as error that the court erred in denying them a trial by jury. ■■■ In the case of Walters v. Blackledge, 220 Miss. 485, 71 So. 2d 433, we held that Section 31 of the Mississippi Constitution, which provides that trial by jury shall remain inviolate, applies only to those cases where a jury was necessary according to the principle of the common law.

■■■ The appellants next argue that the annexing of their property is a denial of due process of law and a taking of their property without compensation in violation of Section 17 of the Constitution. We find no merit in this contention. Forbes v. Meridian, 86 Miss. 243, 38 So. 676.

■■■ The appellant argues that the City did not introduce the ordinance adopted extending the corporate limits of the City in evidence. The City filed a petition in the Chancery Court of Lauderdale County and attached thereto as exhibits a certified copy of the ordinance adopted by the municipal authorities and a plat of the area. This was in compliance with Section 3374-11, Mississippi Code of 1942. In Hammer, et al. v. Rigby, 65 Miss. 41, 3 So. 137, it was held that an exhibit filed with the declaration becomes a part of the record by virtue of Section 1540, Code of 1880, now Section 1469, Mississippi Code of 1942.

■■■ The appellant also assigns as error and argues that the court erred in overruling objections to the introduction of certain resolutions, etc., which had not been referred to in the petition and that copies had not been filed as exhibits thereto. We find no merit in this contention.

"Ultimate, not evidentiary, facts must be averred,— enough to reveal equitable merits. —It has been noted

that the bill must state every essential fact constituting the cause of action, but the qualification was added that this does not comprise the evidence by which the several facts are to be proved. It is the ultimate essential facts which must be averred, and not the items, or links in the chain of evidence which will prove the ultimate essential facts. It is the issuable facts that are to be stated, not the evidentiary facts. . . . . . ." Griffith, Mississippi Chancery Practice (2d Ed.), Section 170.

 It is argued that the court erred in altering and amending the ordinance by modifying it in that it violated Sections 1 and 2 of the Mississippi Constitution. In Ritchie v. City of Brookhaven, 217 Miss. 860, 65 So. 2d 436, the Court said:

"The provisions of the 1950 act here under review have delegated to the governing authorities of a municipality the power by ordinance to enlarge its existing corporate limits. The court is vested with no such power. Only the municipal authorities can initiate the proceedings by the enactment of an ordinance. The municipality, therefore, by the enactment of such ordinance determines and defines the boundaries of the territory to be annexed. The only power vested in the court is that of determining the reasonableness or unreasonableness of the enlargement. It is said by appellants, however, that the power is vested in the chancellor on the hearing to modity the enlargement, and that hence this confers legislative power upon the court. It is to be noted, however, under this particular provision of the act, that the court has no power to enlarge the proposed annexed territory. Its power to modify the enlargement is only to the extent of reducing the enlargement in the event it should be found by the chancellor from evidence presented that some part of the proposed annexed territory is unreasonable and should be eliminated.

The chancery court has no power of itself to annex territory to an existing municipality. It has no power

to define the boundaries of any proposed annexation. It is only after an ordinance has been passed by the municipal authorities defining and fixing the boundaries of territory to be annexed and after a petition presenting such ordinance to the court for a determination of its reasonableness that the court is called upon to function. The function which the court is then called upon to exercise is a judicial function, that is to say, the determination of the judicial question as to the reasonableness of the ordinance. . . . .''

In the recent case of In Re Extension of Boundaries of the City of Philadelphia, Miss., W. R. Burks, et al., 100 So. 2d 100, we held that the Court had power to decrease the territory to be included, Section 3374-13, Code of 1942, and was amply justified from the evidence in finding that the enlargement, as modified, is reasonable and is required by the public convenience and necessity.

■■ ■ It is finally argued that the burden of proof was upon the City to establish that the proposed extension is reasonable and the public convenience and necessity requires that the proposed extension be approved. In making this contention, the appellants rely upon the case of Extension of the Boundaries of the City of Indianola, 226 Miss. 760, 85 So. 2d 212, and the case of Spears v. City of Oxford, 227 Miss. 801, 87 So. 2d 61.

Section 3374-13, Mississippi Code of 1942, provides: ''If the chancellor finds from the evidence presented at such hearing that the proposed enlargement or contraction is reasonable and is required by the public convenience and necessity, etc.'', he shall enter a decree approving the proposed enlargement. The language of the Court in the Indianola case, written by Judge McGehee, decided Febraury 13, 1956, and the case of Spears v. City of Oxford, written by Judge Hall, decided April 23, 1956, in passing upon the burden of proof, simply followed the language of the statute.

In the case of Ritchie v. City of Brookhaven, supra, decided on June 8, 1953, suggestion of error overruled in 217 Miss. 876, 65 So. 2d 832, the question was raised as to whether or not the determination of the public convenience and necessity was a judicial or legislative question. In the original opinion, we did not expressly pass upon the question, but held that since the act itself provided that if any word, phrase, clause, paragraph or section of the act should be held invalid or unconstitutional, the same did not affect any other section or part of the act. We, therefore, said in the Ritchie case that if it be assumed that the act conferred upon the chancellor the power to determine the public convenience and necessity is unconstitutional as being an attempt to confer legislative powers upon the chancellor, this fact would not strike down the entire act because of the section of the act which provided that if any part be unconstitutional it would not affect the remainder of the act. In the suggestion of error in this case, we expressly held, however, that the determination of the public convenience and necessity is a legislative question, and that this was passed upon by the mayor and aldermen when they adopted the ordinance. We find no conflict between the Ritchie case, the Indianola case, and Spears v. Oxford, supra. In addition, the chancellor, in his decree, expressly found that the proposed enlargement as modified was reasonable and "required by the public convenience and necessity." We think, therefore, that there is no merit in the contention raised that the City failed to meet the burden of proof as to the requirements of public convenience and necessity.

The chancellor's finding that the proposed extension as modified is reasonable is amply supported by the evidence, and, in our opinion, we would not be warranted in holding that such finding of the chancellor is manifestly wrong. It follows that the decree of the lower court should be and is affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Kyle* and *Holmes, JJ.,* concur.