388 So.2d 152 (1980)
In the Matter of the EXTENSION OF the BOUNDARIES OF the CITY OF RIDGELAND, Ms.
CITY OF JACKSON, Ms. and Town of Madison, Ms.
v.
CITY OF RIDGELAND.
No. 52241.
Supreme Court of Mississippi.
September 24, 1980.
*153 William F. Goodman, Jr., Richard F. Scruggs, Watkins & Eager, Howard C. Ross, Jr., Jackson, for appellant.
C.R. Montgomery, S.F. Stater, III, Montgomery, Smith-Vaniz & Stater, Canton, for appellee.
Before ROBERTSON, P.J., and LEE and BOWLING, JJ.
ROBERTSON, Presiding Justice, for the Court:
This is an annexation suit tried by the Chancery Court of Madison County. The City of Ridgeland, Mississippi, a municipal corporation, petitioned the court for approval, ratification, and confirmation of its ordinance enlarging and extending its municipal boundaries to include four areas, designated Tracts I, II, III and IV. Because the required statutory notices were not posted in Tracts I and II, the court removed these tracts from further consideration for annexation.
After a full hearing, the chancellor overruled all objections of the sole objector, City of Jackson, Mississippi, and after disallowing the annexation of Tract IV, decreed the annexation of Tract III with these exceptions:
(1) All lands lying north of the center line of Rice Road;
(2) All lands owned by Pearl River Valley Water Supply District, which lands were described by metes and bounds in the rebuttal testimony of Tom Barth; and
(3) All lands lying east of the aforesaid lands owned by the Pearl River Valley Water Supply District and south of the center line of Rice Road.
The chancellor found that such enlargement and extension was:
"[R]easonable and required by public convenience and necessity and that reasonable public and municipal services will be rendered to the area allowed to be annexed within a reasonable time; that the enlargement herein allowed is in the best interest of the City of Ridgeland and the residents and property owners of that territory allowed to be annexed hereby and to be included within the municipal boundaries of the City of Ridgeland, Mississippi, ..."
The criteria to be applied in annexation cases was recently restated by this Court in Extension of Boundaries of Horn Lake v. Renfro, 365 So.2d 623 (Miss. 1978), in this way:
"(1) The municipality's need for expansion; (2) Whether the area sought to be annexed is reasonably within the path of growth of the city; (3) The potential health hazards from sewage and waste disposal in the annexed area; (4) The municipality's financial ability to make the improvements and furnish municipal service promised. Lowe v. City of Jackson, 336 So.2d 490 (Miss. 1976); Bridges v. City of Biloxi, 253 Miss. 812, 178 So.2d 683 (1965); Dodd v. City of Jackson, 238 Miss. 372, 118 So.2d 319 (1960).
"Other factors that have been considered by the Court are: (5) The need for zoning and overall planning in the area; (6) The need for municipal services in the area sought to be annexed. Smith v. City of Meridian, 237 Miss. 486, 115 So.2d 323 (1959); (7) Whether there are natural barriers between the city and the proposed annexation area; and (8) The past performance and time element involved in the city's provision of services to its present residents. City of Biloxi v. Cawley, 332 So.2d 749 (Miss. 1976)." 365 So.2d at 624-25.
The burden of proving reasonableness as measured by these criteria was upon the petitioner, the City of Ridgeland. Dodd v. City of Jackson, 238 Miss. 372, 118 So.2d 319 (1960).
In his opinion, the chancellor summarized and tabulated the City of Jackson's objections:
*154 (1) These tracts are not within Ridgeland's path of growth but are in Jackson's path of growth.
(2) The portion of tract III which adjoins Ridgeland's eastern boundary has shown no substantial growth or development in the past and the growth and development in tract III has been on the east side thereof.
(3) Ridgeland has sufficient undeveloped land within its present corporate limits to accommodate its future growth.
(4) Ridgeland has not provided reasonable services to certain areas annexed by it in 1975.
(5) Jackson would be adversely affected by permitting Ridgeland this annexation.
Chancellor E.G. Cortright answered Jackson's objections in this way:
"There has been a material change in the facts since the 1975 annexation case: (1) There has been substantial residential development within the City of Ridgeland and much of that development has been in the southern and eastern portion of the City. This development is continuing and appears to be moving toward Ridgeland's southmost eastern boundary and the area in tract III sought to be annexed. (2) The area between Ridgeland's eastern boundary and the Old Canton Road, which the court previously found to be basically pasture and woodlands, is beginning to develop. All of the experts seemed to agree that substantial further development is imminent. (3) The area east of the Old Canton Road has sustained substantial residential growth since January of 1975 and is continuing to experience such development. The picture which the court had before it in 1975 is not the one which now appears. The total development of both south Ridgeland and all of tract III, except the eastmost edge thereof, is now assured.
"... Section 32 is clearly positioned for near term development. This area joins present Ridgeland and it seems prudent that it be under Ridgeland's control if orderly development therein is to be promoted. It is important that growth along the east side of Ridgeland's present boundary be coordinated with that portion of Section 32 which now is unincorporated. The present absence of roads into the interior of Section 32 is understandable and is of no substantial significance. Future roads into the area will inevitably coincide with the future development. Logically, the area would be better served if the location of such interior roads were in the future coordinated with the location and types of developments to be positioned in the area. There are good main roads around this area sufficient to accommodate interior developments. The present development of a substantial water system by Ridgeland around the periphery of this tract puts the City in an advantageous position to assist in developing the area as its needs arise. To view that portion of Section 32 that is now outside of Ridgeland as undeveloped is not to recognize a true picture-as the fringes of the area are developing at a rapid rate. A salutary purpose of annexation is to bring in an area before it is totally developed in order to assure its controlled growth and development. As was stated in Dodd vs. City of Jackson, 238 Miss. 372, 118 So.2d 319 (1960):
[W]here it can be reasonably anticipated that a certain area will become a part of a city in a reasonable time, it is better to take it in and develop the same properly and wisely, with particular reference to a uniform system for securing water, the development of streets, and the collection and disposal of sewage and waste, rather than to let the area develop in a harum-scarum manner as each builder or developer may determine.
"Although recognizing that tract III is a rapidly growing area and is also within its own path of growth, the City of Jackson has not sought to annex the area. On the contrary, Ridgeland's interest in tract III has been active and longstanding and has manifested itself in the extension of its municipal services to the area. It has not only provided water and some sewage *155 facilities, but it has lent its resources in other ways-such as fire fighting, courtesy police investigation, emergency services and consultation on residential development. Tract III is already using Ridgeland's municipal services as to water and sewage. The City is now responding to fire and rescue calls in the area. If the area were annexed, substantial reduction in fire insurance rates would result to those annexed. The fire department of Ridgeland now consists of a substantial number of volunteers, but they appear well equipped and trained and are adequately meeting the needs of Ridgeland. There is no reason to believe that an expansion of the fire department would not follow any annexation. A new fire station and police department in tract III is already contemplated and would be centrally positioned to serve the needs of the existing town and tract III. The already existing water lines of Ridgeland into the populated portions of tract III lends assurance to the City's ability to perform adequately in this area.
"Ridgeland as it exists is unquestionably a small town but it is one that has sustained rapid growth in recent years. Furthermore, it has kept up with its growth in a progressive way as evidenced by the many facts testified to about its governmental organization and services. It has a municipal judge; it has had a recent professional appraisal of its realty; it has well organized and equipped fire and police departments; a building inspector and a comprehensive zoning ordinance. The departments of the City appear to be working well and fully cognizant of their responsibilities.
"It should be both recognized and emphasized that not a single person residing in the areas proposed to be annexed or owning property or operating businesses therein objected to the proposed annexation. In a positive way this is a reflection of the attitude of the people in the proposed areas toward the services presently furnished to them by Ridgeland and those they anticipate if annexed. Furthermore, the unanimous vote of the aldermen of Ridgeland in the adoption of the annexation ordinance must not go unnoticed. To at least some extent, this merits consideration. In this regard our Supreme Court said in In Re Extension of the Boundaries of the City of Indianola, 226 Miss. 760, 85 So.2d 212 (1956):
[A]lthough the Chancellor was not bound by the adjudication of the Mayor and Board of Aldermen that the proposed extension was reasonable, and had the right to determine for himself whether the extension was reasonable and was required by the public convenience and necessity, we think he was entitled to give some weight to the opinion of the city authorities whose responsibility it was to determine whether or not they were justified in asking the approval of the Chancery Court of the ordinance here involved which they had adopted subject to the court's approval.
See also Picayune vs. Quick and Grice, 238 Miss. 429 (1960).
"The point is raised by Jackson that a certain area of Ridgeland west of Highway 51 and east of the present corporate limits which was annexed in 1975 has not yet been provided adequate municipal services. It is true that this relatively small area is still sorely in need of sewage disposal and adequate streets, but it also appears that Ridgeland has not been unaware of the plight of this area and the City's long range plans for improvements are near fruition. Ridgeland has brought its sewer main up to the area and is only awaiting approval of a grant before building sewer lines in the area. Ridgeland stands ready to pave the streets as soon as the sewer lines are laid. It is to Ridgeland's credit that it annexed this blighted area and assumed a responsibility which probably represented a liability to the City.
"Jackson also raises the point that there are no recreational areas presently planned by Ridgeland in tract III. However it must not be overlooked that the eastern portion of tract III abuts the *156 Ross Barnett Reservoir which is a substantial recreational area in its own right. Furthermore, the City plans a recreational park on the west side of tract III in conjunction with its proposed fire and police facilities. Although not touched upon by the evidence, common knowledge tells us that subdivision developments of the character and size presently seen and being developed in tract III often incorporate neighborhood recreational facilities of varying degrees.
......
"Jackson, with understandable logic, presents the argument that tract III is in its path of growth and not that of Ridgeland. The court is not so naive as not to recognize that many of the inhabitants of tract III (and probably Ridgeland as presently constituted) work in the Jackson metropolitan area and use many of the municipal facilities which Jackson has to offer. This is true of many who live even a more substantial distance from Jackson than Ridgeland. It must not be forgotten, however, that citizens of many towns and cities who take only occasional use of Jackson's cultural advantages leave substantial sums with Jackson merchants and which ultimately inure to the benefit of the City of Jackson. I take no issue with the argument that tract III is within Jackson's path of growth. The truth is that all areas immediately surrounding Jackson are in its path. While the path of growth factor is not the only one to be considered in determining the reasonableness of annexation, I do feel that tract III is in a less definitive way also in Ridgeland's path of growth. There is no doubt that Ridgeland itself is growing toward tract III as evidenced by development in the southern portion of that City. The extension of Ridgeland's utility services into tract III has greatly contributed to development in that area. To neither Ridgeland's credit nor Jackson's credit the proximity of the Reservoir has probably contributed to the area's growth.
"The fears of Jackson in being ultimately restricted from future annexation through encirclement by small municipalities is understandable. This would result in it being stymied from further development of its tax base. However, Ridgeland itself stands to have its growth thwarted by both natural and political barriers. To the south it is limited by Jackson. To the north it is limited by the Natchez Trace and the Town of Madison; and to the west by Interstate 55. Growth to its east will be ultimately restricted by the Reservoir. Jackson's plight in this regard is not as serious as it may suspect. Even if Ridgeland was denied this annexation and Jackson was later to acquire tract III and Section 29 which adjoins it, Jackson's growth to the north in this particular area would still be blocked by the Town of Madison. On the other hand, Jackson's growth to the north in the areas west of Ridgeland is unimpaired.
"Ridgeland appears to be in good financial condition and able to furnish the area hereinafter permitted to be annexed with municipal services. Although the City has a considerable bonded indebtedness, it also has substantial cash on hand. Included within that indebtedness are sums now allocated for substantial street improvements within the City. With the added revenue from annexation, the City should have no difficulty in providing proper services to the annexed area."
We are of the opinion, after a careful study of the voluminous record (13 bound volumes containing 2030 pages, plus numerous exhibits too big to be bound into the record), that the proof adduced amply supports the findings and conclusions of the chancellor that the City of Ridgeland should be allowed to extend its municipal boundaries as outlined in the court's decree.
The Final Decree Approving, Ratifying and Confirming the Enlargement and Extension of the Municipal Boundaries of the City of Ridgeland, Madison County, Mississippi, is, therefore, affirmed.
AFFIRMED.
*157 SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
PATTERSON, C.J., took no part.