560 So.2d 713 (1990)
In the Matter of the Extension of the BOUNDARIES OF the City of VICKSBURG, Mississippi.
MAGNOLIA MARINE TRANSPORT COMPANY, Ergon, Inc., Ergon General Store, Inc. d/b/a Ergon Marine and Industrial Supply, Ergon Refining, Inc., Bunge Corporation, Anderson-Tully Company, Tenarc Construction Company, and Warren County Port Commission
v.
CITY OF VICKSBURG, MS.
No. 07-CA-59634.
Supreme Court of Mississippi.
April 4, 1990.
Rehearing Denied May 23, 1990.
*714 Joel J. Henderson, Edward D. Lamar, Henderson Duke Dantone & Hines, Greenville, Edley H. Jones, III, Ward Martin Hassell Jones & Williford, Robert R. Bailess, Wheeless Beanland Shappley & Bailess, Vicksburg, for appellants.
Wren C. Way, Way Field & Bodron, Vicksburg, G. Kenner Ellis, Jr., Greenville, for appellee.
Before HAWKINS, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:
A number of industrial firms north of the present city limits of Vicksburg, Mississippi, appeal a Chancery Court judgment confirming annexation to the City of 31.7 square miles within which Objectors' properties lie. Objectors' principal argument on appeal challenges the jurisdiction of the Chancery Court. They challenge as well the fairness of the proceedings below.
On October 7, 1985, the Mayor and Board of Aldermen of the City of Vicksburg adopted an annexation ordinance finding that the public convenience and necessity required enlargement of the corporate limits of the City by some 68.4 square miles and ordering the annexation thereof. On December 16, 1985, the City commenced the present proceedings by filng in the Chancery Court of Warren County, Mississippi, its complaint for confirmation of the annexation. Throughout the proceedings below, the City argued the entire annexation should be confirmed. In the alternative, the City urged, if the entire annexation were not confirmed, the Court should confirm annexation of a lesser area (-GL-) of 31.7 square miles, and, in fact, in its final judgment the Court did confirm annexation of the lesser area. The 31.7 square mile area confirmed for annexation lies entirely within the original 68.4 square mile area described in the October 7, 1985, annexation ordinance.
Vicksburg's corporate limits have heretofore included some 13.7 square miles in which approximately 26,000 persons reside. The areas in the annexation as confirmed include a large industrial area south and southwest of the present city limits, smaller residential areas to the south, southeast and east, a substantially developed residential corridor extending to the northeast along the western edge of the Vicksburg National Military Park and the harbor fill industrial area to the north and northwest of the present city limits. All Objectors come from this latter area. As enlarged by the annexation, Vicksburg will cover some 45.4 square miles and have a population of approximately 42,000.
Objectors complain that the Court was without authority to approve annexation of the lesser area on grounds the City never made a legislative determination that the public convenience and necessity required such a lesser annexation. The point is specious.
Mississippi law clearly empowers a chancery court sitting in an annexation confirmation proceeding to confirm the annexation of an area less than all the municipality seeks to annex. Mississippi Code § 21-1-33 (1972) provides:
If the chancellor finds from the evidence presented at such hearing that the proposed enlargement or contraction is reasonable and is required by the public convenience and necessity and in the event of an enlargement of a municipality, that reasonable public and municipal services will be rendered in the annexed territory within a reasonable time, the chancellor shall enter a decree approving, ratifying and confirming the proposed enlargement or contraction, and describing the boundaries of the municipality as altered. In so doing the chancellor shall have the right and the power to modify the proposed enlargement or contraction by decreasing the territory to be included in or excluded from the municipality, as the case may be... .
In City of Jackson v. Town of Flowood, 331 So.2d 909 (Miss. 1976), this Court considered Miss. Code Ann. § 21-1-33 (1972), quoted above, concerning the chancery court's power to modify the proposed area. "This provision of the statute gives the annexation procedure flexibility, and the *715 authority of the chancery court to omit areas from the proposed annexation has been upheld in the following cases. Lippian v. Ros, Registrar, 253 Miss. 325, 175 So.2d 138 (1965); In re City of Forest, 247 Miss. 340, 153 So.2d 688 (1963); In re City of Philadelphia, 232 Miss. 582, 100 So.2d 100 (1958); Dodd v. City of Jackson, 238 Miss. 372, 118 So.2d 319 (1960)." Flowood, 331 So.2d at 912. In Flowood, this Court upheld the exclusion of two areas from the Chancery Court's consideration due to an agreement between the city and objectors.
As stated in Lippian v. Ros, Registrar, 253 Miss. 325, 175 So.2d 138 (1965), the chancery court has the authority to "(1) ratify and approve the ordinance if found to be reasonable, (2) modify the proposed enlargement or contraction by decreasing the territory to be included or excluded, or (3) deny in toto the proposed enlargement or contraction if it is found to be unreasonable." Lippian, 175 So.2d at 144, citing Smith v. City of Meridian, 237 Miss. 486, 489, 115 So.2d 323 (1959); Ritchie v. City of Brookhaven, 217 Miss. 860, 65 So.2d 436, 832 (1953).
In a similar vein, Objectors claim they were surprised at the City's last minute maneuver in restricting the area it sought to annex, all to Objectors' great prejudice. Further, we are told the Court erred in allowing the City to offer evidence with respect to the lesser 31.7 acre area. The Court held evidence of the reasonableness of annexing the smaller area was necessarily
relevant and a necessary part of the Court's consideration of the whole area sought to be annexed.... In the Court's view, when the City disclosed that it would prove the reasonableness of annexing the entire area, the necessity as to any portion thereof is self-apparent.
We agree. Moreover, the record reflects that, after the City had offered its evidence in support of annexing the lesser area at the June 1986 hearing, the proceedings recessed, and it was only at a second recessed hearing held in January of 1987 that Objectors were required to go forward with their proof. We hold there was no legal inadequacy in the lack of notice via pleadings and discovery available to Objectors prior to the June 1986 hearing. Any practical inconvenience was more than cured by the fact that Objectors had some seven months within which to prepare their opposition case which was presented in January of 1987.
Particular objection is made to the use by the City of the Municipal Annexation Resource Analysis Study prepared by Joseph A. Lusteck and Associates, Inc. in August of 1982. The Lusteck Study discussed a proposed annexation of an area north of the current city limits of Vicksburg and very much like unto the area confirmed by the Chancery Court. In fact, Objectors had access to the annexation study well in advance of trial and on May 21, 1986 obtained the deposition of Lusteck, at which point he was questioned and cross-examined extensively about the study.
In the end, the Chancery Court is required to determine that the proposed annexation is reasonable. Bassett v. Town of Taylorsville, 542 So.2d 918, 920 (Miss. 1989). "The reasonableness standard, of course, has in mind the interest both of the municipality seeking annexation and, as well, the owners of property and other inhabitants of the area sought to be annexed." Id. at 920-21. See City of Greenville v. Farmers, Inc., 513 So.2d 932, 941 (Miss. 1987) (Reasonableness is a judicial question.); Western Line Consolidated School District v. City of Greenville, 465 So.2d 1057 (Miss. 1985) (same).
The Court below noted that over the years our cases have recognized a number of general criteria or indicia of reasonableness and considered each carefully and in detail, although in the end observing correctly that
[t]hese criteria, while helpful, are not conclusive, nor are they the only factors which may be considered in the Court's "reasonableness" determination. All relevant factors must be weighed.
[Emphasis in original]
We have on recent occasions made clear the factors enumerated in Dodd v. City of *716 Jackson, 238 Miss. 372, 396-97, 118 So.2d 319, 330 (1960) as expanded over the years in our later decisions, are not separate and independent tests but mere indicia of reasonableness, and that the Court's determination in the end must be whether, under the totality of the circumstances, the annexation (or any part thereof) is reasonable. In re Enlargement of Corporate Boundaries of the City of Booneville, Prentiss County, Mississippi, 551 So.2d 890, 892 (Miss. 1989); In the Matter of the Extension of the Boundaries of the City of Jackson, Mississippi, 551 So.2d 861, 864 (Miss. 1989); Bassett v. Town of Taylorsville, 542 So.2d 918, 921-22 (Miss. 1989).
This Court will reverse a Chancery Court's determination of reasonableness only if the finding is "manifestly wrong or without the support of substantial, credible evidence." Bassett, 542 So.2d at 921, citing McElhaney v. City of Horn Lake, 501 So.2d 401, 403 (Miss. 1987); Extension of Boundaries of City of Moss Point v. Sherman, 492 So.2d 289, 290 (Miss. 1986); Enlargement of Boundaries of Yazoo City v. City of Yazoo City, 452 So.2d 837, 838 (Miss. 1984); Extension of Boundaries of City of Clinton, 450 So.2d 85, 89 (Miss. 1984).
If there is credible, albeit conflicting evidence, this Court will defer to the Chancery Court's findings. Bassett, 542 So.2d at 921, citing McElhaney, 501 So.2d at 403; Moss Point, 492 So.2d at 290; Liddell v. Jones, 482 So.2d 1131 (Miss. 1986); Hans v. Hans, 482 So.2d 1117 (Miss. 1986). In the context of conflicting credible evidence, this Court will not disturb a lower court ruling unless it can be said that from all the evidence such findings are manifestly wrong. Bassett, 542 So.2d at 921, citing McElhaney, 501 So.2d at 403; Extension of Boundaries of City of Biloxi v. City of Biloxi, 361 So.2d 1372, 1376 (Miss. 1978); City of Picayune v. Quick, 238 Miss. 429, 117 So.2d 718 (1960).
The Chancery Court made findings of evidentiary and ultimate fact, which include twenty-five pages of the Chancery Court's forty-two page final opinion. It would serve no useful purpose to recite these findings. What is apparent is that the Court carefully and meticulously considered each indicia of reasonableness, and, applying the correct legal criteria, found the annexation of 31.7 square miles was reasonable. Although there is certainly evidence in contrast and contradiction of the findings, we do not see how anyone can seriously argue that, given our scope of review, we have authority to interfere.
Objectors raise several further issues which we have considered carefully, but in the end think to merit neither comment nor reversal.
AFFIRMED.
ROY NOBLE LEE, C.J., and PRATHER, ANDERSON, PITTMAN and BLASS, JJ., concur.
SULLIVAN, J., and HAWKINS and DAN M. LEE, P.JJ., dissent.
SULLIVAN, Justice, dissenting:
The majority is correct when it says that the test of Dodd v. City of Jackson, 238 Miss. 372, 396-97, 118 So.2d 319, 330 (1960), has been expanded, and in doing so it has been rendered meaningless. Down through our most recent pronouncement we have set up lists of factors that the chancellor must consider in his determination of reasonableness, and then we have solemnly said that our lists are not really tests, but mere indicia of reasonableness. What does this mean? It means that one person, a chancellor, will decide if the annexation or any part of it, is "reasonable." What will be the yardstick: No one knows. It is not some mystical legal formula discoverable only by judges, steeped in the mysteries of law. It is nothing more than what the chancellor, on a given day, says it is. "Reasonable" is now determined by the length of the chancellor's nose, or foot, if you prefer.
Then, through the magic of our "manifest error" rule we must affirm the finding of the chancellor. All that is required is that five noses of ours be the same length as the chancellor's. As the trial court is *717 presumed correct, we find infrequently that five noses are of different lengths.
What must a city show to expand? That it wants to, that it needs to, that someday it will provide some advantages not now available, and, of course, that it would be unreasonable not to allow annexation.
What must protestors show to avoid being annexed? Who knows? But somehow they must convince the chancellor that to allow the annexation would be unreasonable.
To the end much time, effort, and money are spent parading witnesses and exhibits before the court in an effort to either convince or exhaust the chancellor. All in search of that elusive test "reasonableness." All hope the chancellor's lunch agreed with him. Cities have a need to expand and protestors have a right to object, but if there is no meaningful frame work in which to present these arguments, it is just so much empty noise.
In order that both sides may have a meaningful set of rules to follow that might better lead to reasonable results that can in some degree be measured by anyone, I propose that a municipality, in order to go forward with any annexation, must first show by a preponderance of evidence, that it now adequately provides all municipal services to all areas already within municipal limits. If, in a bifurcated trial, the municipality meets this requirement, the city may then proceed to show why annexation is necessary, and exactly what, when and how it will provide services to the area to be annexed.
If this is accomplished, annexation may be granted but the chancellor's judgment must set out a time table for the city to accomplish what it claims it can for the newly annexed area. If, at the end of the period set out in the judgment the protestors can show by a preponderance of the evidence that the city has not provided the promised services, then the chancellor must set the annexation aside. If they fail, the chancellor shall confirm the annexation. I realize that the chancellor in this case was unaware of what I now propose. Perhaps it would be unfair to him (if he has rights to be determined by us) to reverse his decision and send it back to apply this test, but then, is it fair to the litigants not to?
I would reverse and remand for trial under these guidelines.
HAWKINS and DAN M. LEE, P.JJ., join in this dissent.