# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 93-CA-01288-SCT

*IN RE THE EXCLUSION OF CERTAIN TERRITORY FROM THE CITY OF JACKSON, MISSISSIPPI. SAMUEL COLE, SR., LUCILE B. AUSTIN; KENNETH W. BARNES; REV. LEPOLEIAN BARNES; PEARLEY C. BARNES; REGINALD L. BLUNT; ANNIE COLE; CAROLINE COX; FLETCHER COX; LUTISH DONELSON; SARAH HARRIS; MARTHA M. HAUSEY; MATTHEW HOLDEN; PARTICIA HOLDEN; ALMA JOHNSON; EDITH BERTHA JOHNSON; LESLIE JOHNSON; ANGELA MINOR; DARLENE MINOR; ELLA LEE MINOR; HELEN MINOR; SANDRA MINOR; DAVE MINOR; LYNETTA MINOR; RICKY MINOR; SHARON MINOR; SHERMAN MINOR; JAMES R. PEATRY; PEARLENE PEATRY; MARY E. PERKINS; WILLIE G. PERKINS; GEORGE PHILLIPS; MATTIE PHILLIPS; LEE R. ROACH; MATTIE M. ROACH; WALTER SCHMIDT, SR.; ELOIS SCHMIDT; GLORIA J. WELLS; HARRY L. WELLS; EULA M. WILLIAMS; ROBERT WILLIAMS; REBECCA JOHNSON; GRETA L. WELLS; RENAY HINTON; BONITA HINTON AND JESSIE RUSSELL*

*v.*

*CITY OF JACKSON, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/29/93 |
| TRIAL JUDGE: | HON. W. E. BEARDEN JR. |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | WILLIAM A. PYLE |
| | JERRY L. MILLS |
| | BOB MONTGOMERY |
| | MARY B. DAVIS |
| ATTORNEYS FOR APPELLEE: | DOUGLAS J. GUNN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART - 6/5/97 |
| MOTION FOR REHEARING FILED: | 7/7/97 |
| MANDATE ISSUED: | 9/11/97 |

**BEFORE SULLIVAN, P.J., SMITH AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. Special Chancellor, W. E.Bearden, Jr., found in favor of the City of Jackson which opposed a deannexation proceeding filed by the appellants in this cause. On appeal, the appellants assign as error the following issues:

*1. Whether the jurisdictional requirements of Miss. Code Ann. § 21-1-45 (1972), that two-thirds of the qualified electors residing in the territory proposed to be excluded from a municipality must sign the petition for exclusion, was met by the petitioners seeking to be excluded?*

*2. Whether deannexation is reasonable under the facts and circumstances as they exist today, as opposed to the facts, circumstances, projections and promises made by the City of Jackson at the time this area was annexed?*

*3. Whether deannexation is fair to residents seeking to be excluded, and to the City of Jackson and the residents of the City of Jackson living outside the area sought to be deannexed?*

*4. Whether deannexation of the purely rural areas of the territory sought to be excluded is reasonable, should the Court decide that deannexation of the I-220 Business Park is unreasonable?*

¶2. We do not discuss the issues separately since they are interrelated and may be disposed of by singular analysis.

## FACTS

¶3. In 1987, this court approved the annexation of 4.92 square miles by the City of Jackson along its northern border. This proceeding included all of the lands involved in the present controversy. However, the portion sought to be detached in this proceeding does not include that portion of the 4.92 acres belonging to Tougaloo College. These property owners did not object to annexation, and their property would apparently remain unaffected by this proposed detachment.

¶4. At the time of the Petition, fifty-five (55) residents of the deannexation area were qualified electors. The Petition for Deannexation was signed by fifty (50) individuals, all but three of whom were qualified electors residing in the deannexation area. Signatures of forty-five of the Petitioners who were qualified electors residing in the deannexation area were verified. Petitioner Harry Wells testified that his signature on the Petition was placed thereon by his wife at his request. Mr. Wells ratified both the signature and his support for the deannexation Petition. Furthermore, the signature

of Rebecca Travis Johnson was neither confirmed by the testimony at the trial nor contradicted by the City of Jackson. The court found the Petitioners met the required statutory signing of two-thirds of the qualified electors and all other requirements set out under **Miss. Code Ann.** § 21-1-45 (1990).

¶5. The area sought to be detached from the City of Jackson comprises 3.72 % of the total land area of the existing City of Jackson. The existing City, comprises 110 square miles. According to the 1990 census, the deannexation area contains 159 persons while the City of Jackson contains 196,637.

¶6. Testimony reflected that only one new residence had been constructed in the area since annexation into the City of Jackson. Additionally, only one building permit had been issued and one residential permit had been applied for but not purchased. The number of occupied residences in the proposed deannexation area has declined from 65 in 1986 to 48 at the time of trial. At the time of the trial of the original annexation case in 1986, there were three occupied residences on Cole Road Extended. At the time of the deannexation trial, all were vacant. At the time of trial of the annexation case in 1986, there were two businesses in the area. One was a junkyard on Peatry Pendleton Lane. It still exists. The other was a day care center licensed for 43 children. This business is now closed. Total tax revenues produced by the deannexation area is $177,814.55 per year.

¶7. The proof showed that providing water and sewage services to the subject acreage would cost $4,190,000.00 or $87,292.00 per residence. Thus, the taxpayers of the City of Jackson would bear the brunt of developing the infrastructure. Even though the annexation was effective in December, 1989, no contracts for the capital improvements provided for in the annexation ordinance passed by the City of Jackson have been issued and none of the promised services have been provided.

¶8. The City of Jackson, from January 1, 1991 through July 1993, answered 531 police calls to the deannexation area, and its fire department made approximately 69 responses to the newly acquired area. The fire department also purchased new equipment, and increased staffing at two of the three fire stations assigned this new area. Upon being annexed this area received Jackson's Class 3 fire protection rating (the best in the state). The fire department also conducted building inspections, conducted fire prevention activities and implemented an E-911 service.

¶9. The City asserts that it has issued seventeen building permits and erected 147 street lights in the deannexed area. The City contends that it has spent $31,000 in street repair and improvements to this area, and $52,000 on drainage improvements and repairs. The City also states that it has provided pest control services and twice a week garbage collection.

LAW

¶10. In 1950, the Mississippi Legislature enacted **Miss. Code Ann.** §§ 21-1-45 and 21-1-47 (1990) to provide the statutory method for the annexation or deannexation of territory from a municipality. Neither statute has been amended since enactment. **Miss. Code Ann.** § 21-1-47 clearly states that:

> . . . all of the proceedings of this chapter with regard to proceedings in the chancery court upon petitions for the creation, enlargement, and contraction of municipalities shall apply in like manner thereto. . . .

*Id.* Therefore, this Court is required to apply the standards set forth for the annexation of territory to

a municipality the same to a deannexation case as it would to an annexation case.

¶11. This Court has addressed deannexation of territory from a municipality on only three occasions. *See Marshall v. Mayor and Board of Selectmen of McComb City*, 251 Miss. 750, 171 So. 2d 347, *cert. denied,* 382 U.S. 836 (1965); *Wheat v. Poplarville*, 149 Miss. 424, 115 So. 559 (1928); *Thomas v. Long Beach*, 111 Miss. 329, 71 So. 570 (1916). *Marshall* addressed a city's attempt to deannex territory which had been annexed by a previous administration. *Wheat* and *Thomas* both addressed a situation similar to the action *sub judice*. In *Wheat* and *Thomas*, residents from an annexed territory petitioned to be deannexed from the respective municipalities. In both cases this Court allowed the deannexation. In all three cases, this Court applied what appears to be a forerunner of today's modern twelve part indicia of reasonableness.

¶12. This Court clearly reiterated the proper method to review annexation of new territory in *In Re Corp. Limits of Hattiesburg*, 588 So. 2d 814, 818-19 (Miss. 1991)[hereinafter *Hattiesburg*]. *Accord Extension of Boundaries of the Town of Mantachie*, 685 So. 2d 724, 726-27 (Miss. 1996).

> This Court has set forth a list of factors or so called indicia of reasonableness to guide the chancellor in his determination of the reasonableness of a city's annexation request. The Court first enumerated these factors in *Dodd v. City of Jackson*, 238 Miss. 372, 396-97, 118 So. 2d 319, 330 (1960), and in later decisions has expanded the list.

*Hattiesburg*, 588 So. 2d at 818. This list of appropriate considerations for the Chancery Court has since grown to twelve. *See e.g., In re Enlargement of Corp. Limits of Gulfport*, 627 So. 2d 292, 293 (Miss. 1993). As stated in *Hattiesburg*:

> These factors, however, are only indicia of reasonableness, not separate and distinct tests in and of themselves. *Bassett v. Town of Taylorsville*, 542 So. 2d 918, 921 (Miss. 1989). The chancellor must consider all of these factors and determine whether under the totality of the circumstances the annexation is reasonable. *Id.* at 921-22; *In the Matter of the Extension of the Boundaries of the City of Vicksburg*, 560 So. 2d 713, 716 (Miss. 1990); *In re Enlargement of Corporate Boundaries of the City of Booneville v. City of Booneville*, 551 So. 2d 890, 892 (Miss. 1989); *In the Matter of the Extension of the Boundaries of the City of Jackson*, 551 So. 2d 8612, 864 (Miss. 1989). This Court's standard of review is very limited. The Court can only reverse the Chancery Court's findings as to the reasonableness of an annexation if the chancellor's decision is manifestly wrong and is not supported by substantial and credible evidence.

*Hattiesburg*, 588 So. 2d at 819. We also stated "[w]here there is conflicting, credible evidence, we defer to the findings below." *Basset v. Taylorsville*, 542 So. 2d 918, 921 (Miss. 1989). "Findings of fact made in the context of conflicting, credible evidence may not be disturbed unless this Court can say that from all the evidence that such findings are manifestly wrong, given the weight of the evidence." *Basset*, 542 So. 2d at 921. "We only reverse where the Chancery Court has employed erroneous legal standards or where we are left with a firm and definite conviction that a mistake has been made." *Id.*

¶13. As stated in *Bassett v. Taylorsville*, 542 So. 2d 918, 921 (Miss. 1989):

In a series of cases beginning with *Dodd v. City of Jackson*, 238 Miss. 372, 396-97, 118 So. 2d 319, 330 (1960) down through most recently *McElhaney v. City of Horn Lake*, 501 So. 2d 401, 403-04 (Miss. 1987) and *City of Greenville v. Farmers. Inc.*, 513 So. 2d 932, 941 (Miss. 1987), we have recognized eight indicia of reasonableness. These include (1) the municipality's need for expansion, (2) whether the area sought to be annexed is reasonably within the path of growth of the city, (3) the potential health hazards from sewage and waste disposal in the annexed areas, (4) the municipality's financial ability to make the improvements and furnish municipal services promised, (5) the need for zoning and overall planning in the area, (6) the need for municipal services in the area sought to be annexed, (7) whether there are natural barriers between the city and the proposed annexation area, and (8) the past performance and time element involved in the city's provision of services to its present residents.

Other judicially recognized indicia of reasonableness include (9) the impact (economic or otherwise) of the annexation upon those who live in or own property in the area proposed for annexation, *Western Line Consolidated School District v. Greenville*, 465 So. 2d 1057, 1059 (Miss. 1985); (10) the impact of the annexation upon the voting strength of protected minority groups, *Enlargement of Boundaries of Yazoo City*, 452 So. 2d 837, 842-43 (Miss. 1984); (11) whether the property owners and other inhabitants of the areas sought to be annexed have in the past, and for the foreseeable future unless annexed will, because of their reasonable proximity to the corporate limits of the municipality, enjoy the (economic and social) benefits of proximity to the municipality without paying their fair share of taxes, *Texas Gas Transmission Corp. v. City of Greenville*, 242 So. 2d 686, 689 (Miss. 1971); *Forbes. et al. v. Mayor & Board of Aldermen of City of Meridian*, 86 Miss. 243, 38 So. 676 (1905); and (12) any other factors that affect reasonableness.

*Bassett*, 542 So. 2d at 921. These factors have since been applied consistently by this Court. *See e.g. In re Extension of Corp. Boundaries of Mantachie*, 685 So. 2d 724, 726-29 (Miss. 1996).

¶14. As recently stated by Justice Pittman in his well reasoned dissent in *Extension of Boundaries of Columbus*, 644 So. 2d 1168, 1187-88 (Miss. 1994)(Pittman, J., dissenting (5-4 vote)):

[d]eannexation completes the statutory scheme. Deannexation has been deemphasized to the detriment of the people who are to be or have been annexed. This opinion is written in part to recognize, and to emphasize deannexation where it is necessary to the protection of the areas annexed by the municipalities. It is the only protection that the area to be annexed or the people to be annexed have and the Court is their only forum. . . . The deannexation process should serve as a reminder to the municipality that even if annexation is approved, the responsibility to provide the promised services is a serious one. . . . *Annexation and deannexation should be viewed by the chancery courts on an equal basis.* Although the court may grant annexation when a city petitions it with a reasonable plan, the court must be just as quick to grant deannexation when the city does not deliver on services promised in the plan.

(emphasis added). The time has come for this Court to exercise this ultimate responsibility.

¶15. In applying the twelve factors to the deannexation petition, this Court finds that the petitioners for deannexation have proven the reasonableness of their petition. This Court further states that it is left with a firm and definite conviction that a mistake has been made. Therefore, the decision of the

chancellor must be reversed and the petition for deannexation must be granted. It reaching the decision, with this Court examining the indicia of reasonableness in the totality of the circumstances, we clearly find that the deannexation must be granted.

¶16. This deannexation will not affect Jackson's need for expansion. This is clear on the face of the record. Businesses and residents have fled the controverted area since the 1986 expansion. Additionally, 34.3 percent of existing land in Jackson is vacant, and according to census reports, the City of Jackson's population has decreased. Jackson is not expanding in this area, and may in fact be retreating. The territory to be deannexed, with the exception of the I-220 Business Park area, is mostly rural and agricultural in nature.

¶17. The controverted area is not reasonably within the growth path of Jackson. Jackson is reasonably concerned with expansion of the City of Ridgeland blocking the future growth of Jackson. However, due to the fact that the Tougaloo college area blocks Ridgeland from expanding westward, this does not affect the deannexation decision. Furthermore, it is clear from the record that what little expansion the City of Jackson is experiencing is in the northeastern area rather than in the northwestern area at issue. Since no sewer service has been provided to the residential portion of the area to be deannexed, and only limited other services have been provided, potential health hazards are of no concern.

¶18. The municipality is unable or unwilling to expend the necessary funds to provide the services and infrastructure promised within the area. This is clear in that no action has been taken toward providing sewer services in the area. In addition, the City of Jackson has failed to build the promised fire station. It is clear from the projected cost of providing these services, the City is not likely to provide these services in the near future. In addition, there is little need for municipal level zoning, overall planning, or municipal services in this mostly rural and agricultural area. Most citizens appeared perfectly content with Madison County Sheriff's Office providing crime protection and with county wide trash pick-up.

¶19. Of great concern to this Court is the cost to the other citizens of Jackson to provide the proposed services to the small number of affected residents. The record shows a projected cost of over $80,000 per house to provide sewer services to the new residents. This burden will clearly fall on the current residents of Jackson. In addition, this Court is greatly concerned with the extreme delay and past performance of the city in the provision of services to its present residents and to the new residents. Finally, we find that the residents of the area do not currently receive benefits necessary to balance their fair share of the taxes paid. There are no natural barriers between the controverted area and the city of Jackson.

¶20. Applying all factors, we find that the chancellor committed manifest error in refusing the petition of the residents. We find that this is not merely a situation of differing interpretation of conflicting facts, but rather find this to relate to the reasonableness of the deannexation. Therefore, we reverse the Chancellor's decision and render finding that the deannexation order as petitioned should have been granted.

¶21. **REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION**.

**LEE, C.J., SULLIVAN, P.J., PITTMAN, McRAE, ROBERTS AND SMITH, JJ., CONCUR. PRATHER, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, J.**

**PRATHER, PRESIDING JUSTICE, DISSENTING:**

¶22. Because the chancellor's decision to dismiss the complaint for deannexation was supported by substantial evidence and was consistent with this Court's ruling approving the proposed annexation of the territory at issue, I respectfully dissent. The chancellor did not abuse his discretion, considering the testimony that Jackson was providing municipal services and was in the process of making the necessary water and sewer improvements to this area. Moreover, this Court held in 1989 that Jackson's proposed five-year plan for annexation of the disputed area was reasonable. To allow the appellants to successfully sue for deannexation less than three years later is inconsistent with this Court's original ruling allowing annexation in this case. For these reasons, the chancellor's judgment that the complaint for deannexation was unreasonable should be upheld.

¶23. The standard for reviewing a chancellor's decision on the reasonableness of a deannexation is "very limited. The Court can only reverse the Chancery Court's findings as to the reasonableness of an annexation [or deannexation] if the chancellor's decision is manifestly wrong and is not supported by substantial and credible evidence." *See Matter of Extension of the Boundaries of the City of Columbus*, 644 So. 2d 1168, 1173 (Miss. 1994) (citing *Matter of Enlargement of Corp. Limits of Hattiesburg*, 588 So.2d 814, 819 (Miss.1991); *Matter of Boundaries of City of Vicksburg*, 560 So.2d 713, 716 (Miss.1990)).

¶24. The chancellor in the case *sub judice* specifically found that the "City has provided basic municipal services promised in the ordinance of annexation." Indeed, there is ample evidence in the record to support this conclusion. Between January, 1991, and July, 1993, the Jackson Police Department made 531 calls and the Jackson Fire Department made sixty-nine calls to the area. In addition, the occupants of the area enjoyed the City's zoning, planning, pest control, and garbage collection services. The City also made street and drainage improvements and repairs in the area.

¶25. The majority seems to base its decision on the fact that the City had not delivered the water and sewer improvements that were promised in the annexation ordinance. The ordinance, which was approved by this Court in 1989, provided that the water and sewer services would be made available to the annexed area within five years. The appellants filed this suit for deannexation less than three years later, in 1992.

¶26. The Jackson Public Works Director testified that the City had authorized $4,119, 939.47 to be spent on water and sewer projects in the affected area and that the proposed water and sewer improvements would be completed within the five-year period following the annexation. The chancellor held that five years was a reasonable amount of time to make such improvements. Not only was the chancellor's ruling supported by substantial evidence, it was, of course, completely consistent with this Court's original holding that the proposed annexation of this land was reasonable.

*See Matter of Extension of Boundaries of the City of Jackson*, 551 So. 2d 861 (Miss. 1989). Therefore, the chancellor correctly found that the appellants filed suit for deannexation before the City of Jackson had a reasonable amount of time in which to enforce the annexation ordinance and provide sewer and water services to the annexed territory. *See also Matter of Extension of Boundaries of the City of Clinton*, 450 So. 2d 85, 89 (Miss. 1984) (upholding as reasonable an annexation plan that called for water and sewer services within a five-year period).

¶27. The majority opinion also indicates that the cost of the proposed sewer and water project is a matter "[o]f great concern". As stated earlier, the proposed project would cost over four million dollars, which is, indeed, a considerable amount of money. However, Jackson had the funds available and had allocated the funds for the water and sewer improvements. Furthermore, the Jackson City Council unanimously opposed the deannexation of this area. Therefore, the chancellor appropriately found that the "mayor and city council have shown that they consider the area improtant to the city of Jackson."

¶28. The reason this strip of land is important to Jackson is apparent from the record. The land at issue is critical to Jackson's northern pattern of growth. Indeed, this Court recognized years ago (in the opinion originally allowing the annexation of this territory) that Jackson has very few remaining paths of growth.[1] *See Matter of Extension of Boundaries of the City of Jackson*, 551 So. 2d 861, 865 (Miss. 1989).

¶29. The majority's concern with the cost of the proposed water and sewer project is not a judicial question. Rather, it is a matter best decided by the governing authorities of the City of Jackson. *See Marshall v. Mayor and Board of Selectmen of the City of McComb*, 171 So. 2d 347, 352-53 (Miss. 1965). The wisdom of spending four million dollars to preserve this path of growth is not the question before this Court, and the attention given this issue by the majority is undue. As the chancellor found, "Jackson is the capital of the State and by far the largest city in the State. It has a full-time mayor, a full-time urban planner, public works manager, and other employees to make decisions as to the best interests of Jackson in keeping [the area] sought to be deannexed."

¶30. The only question before this Court is the reasonableness of deannexing this property. This Court held in 1989 that Jackson's annexation of the disputed area was reasonable and upheld Jackson's proposed five-year plan for water and sewer improvements. Less than three years later, the appellants filed this suit for deannexation. The record indicates that Jackson stood ready to provide the promised improvements within the five-year period. To allow deannexation less than three years after this Court's approval of the proposed five-year annexation plan would be extremely unreasonable and inappropriate. This Court should respect its own former decision approving a five-year plan and the City of Jackson's reliance on that time period for compliance.

¶31. Furthermore, the record reflects that the chancellor heard the facts and considered them in the light of the appropriate legal standards. There is nothing in the record to indicate that the chancellor committed manifest error by dismissing the complaint for deannexation as unreasonable. Thus -- given this Court's previous decision in this case, the highly deferential standard of review in this situation, and the ample evidence to support the chancellor's decision -- I would affirm. Therefore, I must respectfully dissent.

**BANKS, J., JOINS THIS OPINION.**

1. This is not an ordinary annexation case. Much more is at stake than whether a large municipality may annex 4.92 square miles along its northern border. Rather, we must decide whether Mississippi's largest and capital city, already largely landlocked by a plethora of bedroom communities, will have another nail driven in the coffin which, if closed, will doom it to the fate already experienced by so many central cities around the nation. It is patently unreasonable that this should occur.

* * *

We must leave open Jackson's door to the future.

***Matter of Extension of Boundaries of City of Jackson***, 551 So. 2d 861, 862-68 (Miss. 1989).